In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 12-1241 & 12-1255

IN THE MATTER OF:

BRANDON C. CLARK and HEIDI HEFFRON-CLARK,

*Debtors-Appellees*.

APPEAL OF:

WILLIAM J. RAMEKER, Trustee

Appeals from the United States District Court
for the Western District of Wisconsin.
No. 11-cv-482-bbc—**Barbara B. Crabb**, *Judge*.

ARGUED SEPTEMBER 6, 2012—DECIDED APRIL 23, 2013

Before EASTERBROOK, *Chief Judge*, and FLAUM and
WILLIAMS, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Congress has decided
that funds set aside for retirement need not be used
to pay pre-retirement debts. This policy is implemented
through 11 U.S.C. §522(b)(3)(C) and (d)(12), which ex-
empt retirement funds from creditors' claims in bank-
ruptcy. This appeal presents the question whether a

non-spousal inherited individual retirement account ("inherited IRA" for short) is exempt.

Section 522(b)(3)(C) and (d)(12) are identical. Each exempts from creditors' claims any "retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under sections 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986." An individual retirement account by which a person provides for his or her own retirement meets this requirement. If a married holder of an IRA dies, the decedent's spouse inherits the account and can keep it separate or roll it over into his or her own IRA. Either way, the money remains "retirement funds" in the same sense as before the original owner's death: the surviving spouse cannot withdraw any of the money before age 59½ without paying a penalty tax and must start withdrawals no later than the year in which the survivor reaches 70½. Because the money entered the IRA without being subject to the income tax, all withdrawals are taxed at ordinary rates.

Different rules govern inherited IRAs. We illustrate using the facts of this case. At her death, Ruth Heffron owned an IRA worth approximately $300,000. Ruth's daughter Heidi Heffron-Clark was the designated beneficiary. Ruth's account passed to Heidi. It remains sheltered from taxation until the money is withdrawn, but many of the account's other attributes changed. For example, no new contributions can be made, and the balance cannot be rolled over or merged with any other account. 26 U.S.C. §408(d)(3)(C). And instead of being

dedicated to Heidi's retirement years, the inherited IRA must begin distributing its assets within a year of the original owner's death. 26 U.S.C. §402(c)(11)(A), incorporating 26 U.S.C. §401(a)(9)(B). Payout must be completed in as little as five years (though the time can be longer for some accounts). In other words, an inherited IRA is a time-limited tax-deferral vehicle, but not a place to hold wealth for use after the new owner's retirement. This statutory treatment allows the beneficiary to avoid paying income tax immediately after the original owner's death (recall that money in a normal IRA is pre-tax dollars; unlike assets that pass with a decedent's estate, the contents of an inherited IRA are taxable) while limiting the duration of tax deferral. If recipients of inherited IRAs could hold the wealth until their own retirement, tax deferral might become tax exemption, as capital held in IRAs could pass down through the generations without ever being subject to income tax.

In the bankruptcy proceeding initiated by Heidi Heffron-Clark and her husband Brandon Clark ("the Clarks"), Bankruptcy Judge Martin held that an inherited IRA does not represent "retirement funds" in the hands of the current owner and so is not exempt under §522(b)(3)(C) and (d)(12). 450 B.R. 858 (Bankr. W.D. Wis. 2011). The bankruptcy judge concluded that money counts as "retirement funds" (a term that the Bankruptcy Code does not define) only when held for the owner's retirement, while an inherited IRA must be distributed earlier. A district judge reversed, 466 B.R. 135 (W.D. Wis. 2012), adopting the view, first articulated in *In re Nessa*, 426 B.R. 312 (BAP 8th Cir. 2010), that any money rep-

resenting "retirement funds" in the decedent's hands must be treated the same way in successors' hands. The fifth circuit has since agreed with that approach, *In re Chilton*, 674 F.3d 486 (5th Cir. 2012), observing that §522(b)(3)(C) and (d)(12) refer to "retirement funds" without providing that they must be the debtor's. It is enough, *Chilton* concludes, if they were ever anyone's retirement funds.

Sometimes assets are exempt in bankruptcy because of how they function in someone else's hands. Suppose Heidi Heffron-Clark were the trustee of a retirement account for the benefit of her sister. Trustees are legal owners of the assets they administer, but the Clarks' creditors could not reach retirement assets that Heidi was holding as trustee. So we follow *Chilton* in observing that exemptions in bankruptcy do not (necessarily) depend on whether an asset is a retirement fund (or an agricultural tool, or one of the other categories of exemption) as the debtor uses it. But by the time the Clarks filed for bankruptcy, the money in the inherited IRA did not represent *anyone's* retirement funds. They had been Ruth's, but when she died they became no one's retirement funds. The account remains a tax-deferral vehicle until the mandatory distribution is completed, but distribution precedes the owner's retirement. To treat this account as exempt under §522(b)(3)(C) and (d)(12) would be to shelter from creditors a pot of money that can be freely used for current consumption.

To see this, suppose Ruth had withdrawn the entire $300,000 from her IRA, paying the penalty tax if neces-

sary, waited a month, then given the money to Heidi. The money would have been "retirement funds" while in Ruth's IRA, but not thereafter; in Heidi's bank account the money would be no different from any other assets she could save or spend at will. And that would have been true during the month Ruth banked the funds before sending them to Heidi. Ruth's creditors could have reached the money, notwithstanding the fact that it formerly was part of her retirement account. Why should it make a difference whether the money passed to Heidi on Ruth's death or a little earlier? Either way, the money used to be "retirement funds" but isn't now. We doubt that *Chilton* would think that money expressly withdrawn from an IRA retains its character as "retirement funds." Section 522(b)(3)(C) and (d)(12) provides that the exemption depends on the *conjunction* of tax deferral and assets' status as "retirement funds"; that an inherited IRA provides tax benefits is not enough.

*Chilton* and *Nessa* give weight to the phrase "inherited individual retirement account." It includes the word "retirement," after all. True enough, but the "IRA" part of "inherited IRA" (as the Internal Revenue Code uses the phrase) designates the funds' *source*, not the assets' current status. As we have observed, an inherited IRA does not have the economic attributes of a retirement vehicle, because the money cannot be held in the account until the current owner's retirement.

*Chilton* and *Nessa* also give weight to the fact that many of the other exemptions in §522 refer to "the debtor's" interests, while §522(b)(3)(C) and (d)(12) does

not. For example, §522(b)(3)(B) exempts "any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest . . . is exempt from process under applicable nonbankruptcy law". This sort of language has a temporal effect: what is exempt is the debtor's tenancy when the bankruptcy begins. A debtor who on the date of filing has $100,000 in cash and no real property cannot later invest the $100,000 in a joint tenancy and then claim the property as exempt. Similarly a farmer cannot buy new farm implements after filing for bankruptcy and claim the acquisition as exempt. Section 522(b)(3)(C) and (d)(12) gives debtors a break by omitting a temporal restriction: new value added to a retirement fund during bankruptcy (an employer may continue to make retirement contributions) is outside creditors' reach, even though new real property and new farm tools are not. But temporal differences in the way exemptions work does not suggest that a pot of assets that is not "retirement funds" *any time* during the bankruptcy is exempt just because the debtor's predecessor in interest had saved for retirement.

Consider a parallel situation. The Bankruptcy Code provides a homestead exemption (subject to caps under state law). So if Ruth had been living at home and had filed for bankruptcy, some or all of the house's value would have been exempt from creditors' claims. Section 522(b)(3)(A) implements this by exempting a "domicile" in which the debtor lived for at least 730 days before filing for bankruptcy. Suppose Heidi had inherited her

mother's house and rented it out. She could not claim the property as exempt just because it used to be her mother's home; it would be exempt only if it had been Heidi's home for the two years before the Clarks' filing. Exemption would depend on how Heidi used the property, not how her mother used it. Just so with retirement funds.

At oral argument, the Clarks' lawyer told us that reading the Bankruptcy Code to exempt assets that formerly were someone's retirement funds, but have never been the debtors' retirement funds, would encourage people to save in order to make larger bequests to their children. If parents know that anything in their IRAs could be passed to their relatives free of creditors' claims, they would save more and draw less from IRAs during retirement. That's true enough, but it does not imply an atemporal meaning of "retirement funds." One could equally say that it would promote savings to hold that *any* asset acquired from one's relatives by will, insurance, annuity, or survivorship designation is exempt from creditors' claims. That is not remotely what §522 provides, however. It is always possible to get more of whatever objective may have prompted a given clause, but "no legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law." *Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987) (emphasis in original).

Section 522(b)(3)(C) and (d)(12) does not throw creditors' claims to the wolves in order to enhance the savings and bequest motives. It provides a specific exemption for retirement funds—and inherited IRAs do not qualify, because they are not savings reserved for use after their owners stop working.

The district judge thought the question close and believed that close questions should be decided in debtors' favor. We do not think the question close; inherited IRAs represent an opportunity for current consumption, not a fund of retirement savings. It is therefore unnecessary to decide whether there is or should be an interpretive principle favoring either side in a dispute about the scope of an exemption, or whether any such principle would depend on a combination of federal law (for federal exemptions) plus state law (for state exemptions), as in *In re Barker*, 768 F.2d 191, 196 (7th Cir. 1985).

The bankruptcy judge got this right. We disagree with the fifth circuit's decision in *Chilton*. Because our conclusion creates a conflict among the circuits, we circulated the opinion before release to all judges in active service. None of the judges requested a hearing *en banc*.

REVERSED