(Slip Opinion) OCTOBER TERM, 2013 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## CLARK ET UX. *v.* RAMEKER, TRUSTEE, ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

No. 13–299.   Argued March 24, 2014—Decided June 12, 2014

When petitioners filed for Chapter 7 bankruptcy, they sought to exclude roughly $300,000 in an inherited individual retirement account (IRA) from the bankruptcy estate using the "retirement funds" exemption. See 11 U. S. C. §522(b)(3)(C). The Bankruptcy Court concluded that an inherited IRA does not share the same characteristics as a traditional IRA and disallowed the exemption. The District Court reversed, explaining that the exemption covers any account in which the funds were originally accumulated for retirement purposes. The Seventh Circuit disagreed and reversed the District Court.

*Held*: Funds held in inherited IRAs are not "retirement funds" within the meaning of §522(b)(3)(C). Pp. 4–11.

  (a) The ordinary meaning of "retirement funds" is properly understood to be sums of money set aside for the day an individual stops working. Three legal characteristics of inherited IRAs provide objective evidence that they do not contain such funds. First, the holder of an inherited IRA may never invest additional money in the account. 26 U. S. C. §219(d)(4). Second, holders of inherited IRAs are required to withdraw money from the accounts, no matter how far they are from retirement. §§408(a)(6), 401(a)(9)(B). Finally, the holder of an inherited IRA may withdraw the entire balance of the account at any time—and use it for any purpose—without penalty. Pp. 4–6.

  (b) This reading is consistent with the purpose of the Bankruptcy Code's exemption provisions, which effectuate a careful balance between the creditor's interest in recovering assets and the debtor's interest in protecting essential needs. Allowing debtors to protect funds in traditional and Roth IRAs ensures that debtors will be able to meet their basic needs during their retirement years. By contrast, nothing about an inherited IRA's legal characteristics prevent or dis-

courage an individual from using the entire balance immediately after bankruptcy for purposes of current consumption. The "retirement funds" exemption should not be read in a manner that would convert the bankruptcy objective of protecting debtors' basic needs into a "free pass," *Schwab* v. *Reilly*, 560 U. S. 770, 791. Pp. 6–7.

(c) Petitioners' counterarguments do not overcome the statute's text and purpose. Their claim that funds in an inherited IRA are retirement funds because, at some point, they were set aside for retirement, conflicts with ordinary usage and would render the term "retirement funds," as used in §522(b)(3)(C), superfluous. Congress could have achieved the exact same result without specifying the funds as "retirement funds." And the absence of the phrase "debtor's interest," which appears in many other §522 exemptions, does not indicate that §522(b)(3)(C) covers funds intended for someone else's retirement. Where used, that phrase works to limit the value of the asset that the debtor may exempt from her estate, not to distinguish between a debtor's assets and the assets of another. Also unpersuasive is petitioners' argument that §522(b)(3)(C)'s sentence structure— *i.e.,* a broad category, here, "retirement funds," followed by limiting language, here, "to the extent that"—prevents the broad category from performing any independent limiting work. This is not the only way in which the phrase "to the extent that" may be read, and this argument reintroduces the problem that makes the term "retirement funds" superfluous. Finally, the possibility that an account holder can leave an inherited IRA intact until retirement and take only the required minimum distributions does not mean that an inherited IRA bears the legal characteristics of retirement funds. Pp. 8–11.

714 F. 3d 559, affirmed.

SOTOMAYOR, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 13–299

BRANDON C. CLARK ET UX., PETITIONERS *v.*
WILLIAM J. RAMEKER, TRUSTEE, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SEVENTH CIRCUIT

[June 12, 2014]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

When an individual files for bankruptcy, she may exempt particular categories of assets from the bankruptcy estate. One such category includes certain "retirement funds." 11 U. S. C. §522(b)(3)(C). The question presented is whether funds contained in an inherited individual retirement account (IRA) qualify as "retirement funds" within the meaning of this bankruptcy exemption. We hold that they do not.

I
A

When an individual debtor files a bankruptcy petition, her "legal or equitable interests . . . in property" become part of the bankruptcy estate. §541(a)(1). "To help the debtor obtain a fresh start," however, the Bankruptcy Code allows debtors to exempt from the estate limited interests in certain kinds of property. *Rousey* v. *Jacoway*, 544 U. S. 320, 325 (2005). The exemption at issue in this case allows debtors to protect "retirement funds to the extent those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457,

or 501(a) of the Internal Revenue Code." §§522(b)(3)(C), (d)(12).[1] The enumerated sections of the Internal Revenue Code cover many types of accounts, three of which are relevant here.

The first two are traditional and Roth IRAs, which are created by 26 U. S. C. §408 and §408A, respectively. Both types of accounts offer tax advantages to encourage individuals to save for retirement. Qualified contributions to traditional IRAs, for example, are tax-deductible. §219(a). Roth IRAs offer the opposite benefit: Although contributions are not tax-deductible, qualified distributions are tax-free. §§408A(c)(1), (d)(1). To ensure that both types of IRAs are used for retirement purposes and not as general tax-advantaged savings vehicles, Congress made certain withdrawals from both types of accounts subject to a 10 percent penalty if taken before an accountholder reaches the age of 59½. See §§72(t)(1)–(2); see also n. 4, *infra.*

The third type of account relevant here is an inherited IRA. An inherited IRA is a traditional or Roth IRA that has been inherited after its owner's death. See §§408(d)(3)(C)(ii), 408A(a). If the heir is the owner's spouse, as is often the case, the spouse has a choice: He or she may "roll over" the IRA funds into his or her own IRA, or he or she may keep the IRA as an inherited IRA (subject to the rules discussed below). See Internal Revenue Service, Publication 590: Individual Retirement Arrangements (IRAs), p. 18 (Jan. 5, 2014). When anyone other than the owner's spouse inherits the IRA, he or she may not roll over the funds; the only option is to hold the IRA

_____

[1] Under §522, debtors may elect to claim exemptions either under federal law, see §522(b)(2), or state law, see §522(b)(3). Both tracks permit debtors to exempt "retirement funds." See §522(b)(3)(C) (retirement funds exemption for debtors proceeding under state law); §522(d)(12) (identical exemption for debtors proceeding under federal law). Petitioners elected to proceed under state law, so we refer to §522(b)(3)(C) throughout.

as an inherited account.

Inherited IRAs do not operate like ordinary IRAs. Unlike with a traditional or Roth IRA, an individual may withdraw funds from an inherited IRA at any time, without paying a tax penalty. §72(t)(2)(A)(ii). Indeed, the owner of an inherited IRA not only may but *must* withdraw its funds: The owner must either withdraw the entire balance in the account within five years of the original owner's death or take minimum distributions on an annual basis. See §§408(a)(6), 401(a)(9)(B); 26 CFR §1.408–8 (2013) (Q–1 and A–1(a) incorporating §1.401(a)(9)–3 (Q–1 and A–1(a))); see generally D. Cartano, Taxation of Individual Retirement Accounts §32.02[A] (2013). And unlike with a traditional or Roth IRA, the owner of an inherited IRA may never make contributions to the account. 26 U. S. C. §219(d)(4).

B

In 2000, Ruth Heffron established a traditional IRA and named her daughter, Heidi Heffron-Clark, as the sole beneficiary of the account. When Ms. Heffron died in 2001, her IRA—which was then worth just over $450,000—passed to her daughter and became an inherited IRA. Ms. Heffron-Clark elected to take monthly distributions from the account.

In October 2010, Ms. Heffron-Clark and her husband, petitioners in this Court, filed a Chapter 7 bankruptcy petition. They identified the inherited IRA, by then worth roughly $300,000, as exempt from the bankruptcy estate under 11 U. S. C. §522(b)(3)(C). Respondents, the bankruptcy trustee and unsecured creditors of the estate, objected to the claimed exemption on the ground that the funds in the inherited IRA were not "retirement funds" within the meaning of the statute.

The Bankruptcy Court agreed, disallowing the exemption. *In re Clark*, 450 B. R. 858, 866 (WD Wisc. 2011).

Relying on the "plain language of §522(b)(3)(C)," the court concluded that an inherited IRA "does not contain *anyone's* 'retirement funds,'" because unlike with a traditional IRA, the funds are not "segregated to meet the needs of, nor distributed on the occasion of, any person's retirement." *Id.,* at 863.[2] The District Court reversed, explaining that the exemption covers any account containing funds "originally" "accumulated for retirement purposes." *In re Clark*, 466 B. R. 135, 139 (WD Wisc. 2012). The Seventh Circuit reversed the District Court's judgment. *In re Clark*, 714 F. 3d 559 (2013). Pointing to the "[d]ifferent rules govern[ing] inherited" and noninherited IRAs, the court concluded that "inherited IRAs represent an opportunity for current consumption, not a fund of retirement savings." *Id.,* at 560, 562.

We granted certiorari to resolve a conflict between the Seventh Circuit's ruling and the Fifth Circuit's decision in *In re Chilton*, 674 F. 3d 486 (2012). 571 U. S. ___ (2013). We now affirm.

## II

The text and purpose of the Bankruptcy Code make clear that funds held in inherited IRAs are not "retirement funds" within the meaning of §522(b)(3)(C)'s bankruptcy exemption.

## A

The Bankruptcy Code does not define "retirement funds," so we give the term its ordinary meaning. See

---

[2] The Bankruptcy Court also concluded in the alternative that, even if funds in an inherited IRA qualify as retirement funds within the meaning of §522(b)(3)(C), an inherited IRA is not exempt from taxation under any of the Internal Revenue Code sections listed in the provision. See 450 B. R., at 865. Because we hold that inherited IRAs are not retirement funds to begin with, we have no occasion to pass on the Bankruptcy Court's alternative ground for disallowing petitioners' exemption.

*Octane Fitness, LLC* v. *ICON Health & Fitness, Inc.*, 572 U. S. \_\_\_, \_\_\_ (2014) (slip op., at 7). The ordinary meaning of "fund[s]" is "sum[s] of money . . . set aside for a specific purpose." American Heritage Dictionary 712 (4th ed. 2000). And "retirement" means "[w]ithdrawal from one's occupation, business, or office." *Id.,* at 1489. Section 522(b)(3)(C)'s reference to "retirement funds" is therefore properly understood to mean sums of money set aside for the day an individual stops working.

The parties agree that, in deciding whether a given set of funds falls within this definition, the inquiry must be an objective one, not one that "turns on the debtor's subjective purpose." Brief for Petitioners 43–44; see also Brief for Respondents 26. In other words, to determine whether funds in an account qualify as "retirement funds," courts should not engage in a case-by-case, fact-intensive examination into whether the debtor actually planned to use the funds for retirement purposes as opposed to current consumption. Instead, we look to the legal characteristics of the account in which the funds are held, asking whether, as an objective matter, the account is one set aside for the day when an individual stops working. Cf. *Rousey,* 544 U. S., at 332 (holding that traditional IRAs are included within §522(d)(10)(E)'s exemption for "a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of . . . age" based on the legal characteristics of traditional IRAs).

Three legal characteristics of inherited IRAs lead us to conclude that funds held in such accounts are not objectively set aside for the purpose of retirement. First, the holder of an inherited IRA may never invest additional money in the account. 26 U. S. C. §219(d)(4). Inherited IRAs are thus unlike traditional and Roth IRAs, both of which are quintessential "retirement funds." For where inherited IRAs categorically prohibit contributions, the entire purpose of traditional and Roth IRAs is to provide

tax incentives for accountholders to contribute regularly
and over time to their retirement savings.

Second, holders of inherited IRAs are required to with-
draw money from such accounts, no matter how many
years they may be from retirement.  Under the Tax Code,
the beneficiary of an inherited IRA must either withdraw
all of the funds in the IRA within five years after the year
of the owner's death or take minimum annual distribu-
tions every year.   See §408(a)(6); §401(a)(9)(B); 26 CFR
§1.408–8  (Q–1  and  A–1(a)  incorporating  §1.401(a)(9)–3
(Q–1 and A–1(a))).  Here, for example, petitioners elected
to take yearly distributions from the inherited IRA; as a
result,  the  account  decreased  in  value  from  roughly
$450,000 to less than $300,000 within 10 years.  That the
tax rules governing inherited IRAs routinely lead to their
diminution over time, regardless of their holders' proxim-
ity to retirement, is hardly a feature one would expect of an
account set aside for retirement.

Finally, the holder of an inherited IRA may withdraw
the entire balance of the account at any time—and for any
purpose—without penalty.  Whereas a withdrawal from a
traditional or Roth IRA prior to the age of 59½ triggers a
10 percent tax penalty subject to narrow exceptions, see
n. 4, *infra*—a rule that encourages individuals to leave
such funds untouched until retirement age—there is no
similar limit on the holder of an inherited IRA.  Funds
held in inherited IRAs accordingly constitute "a pot of
money that can be freely used for current consumption,"
714 F. 3d., at 561, not funds objectively set aside for one's
retirement.

## B

Our reading of the text is consistent with the purpose of
the Bankruptcy Code's exemption provisions.  As a general
matter, those provisions effectuate a careful balance be-
tween the interests of creditors and debtors.  On the one

hand, we have noted that "every asset the Code permits a debtor to withdraw from the estate is an asset that is not available to . . . creditors." *Schwab* v. *Reilly*, 560 U. S. 770, 791 (2010). On the other hand, exemptions serve the important purpose of "protect[ing] the debtor's essential needs." *United States* v. *Security Industrial Bank*, 459 U. S. 70, 83 (1982) (Blackmun, J., concurring in judgment).[3]

Allowing debtors to protect funds held in traditional and Roth IRAs comports with this purpose by helping to ensure that debtors will be able to meet their basic needs during their retirement years. At the same time, the legal limitations on traditional and Roth IRAs ensure that debtors who hold such accounts (but who have not yet reached retirement age) do not enjoy a cash windfall by virtue of the exemption—such debtors are instead required to wait until age 59½ before they may withdraw the funds penalty-free.

The same cannot be said of an inherited IRA. For if an individual is allowed to exempt an inherited IRA from her bankruptcy estate, nothing about the inherited IRA's legal characteristics would prevent (or even discourage) the individual from using the entire balance of the account on a vacation home or sports car immediately after her bankruptcy proceedings are complete. Allowing that kind of exemption would convert the Bankruptcy Code's purposes of preserving debtors' ability to meet their basic needs and ensuring that they have a "fresh start," *Rousey*, 544 U. S., at 325, into a "free pass," *Schwab*, 560 U. S., at 791. We decline to read the retirement funds provision in that manner.

_____

[3] As the House Judiciary Committee explained in the process of enacting §522, "[t]he historical purpose" of bankruptcy exemptions has been to provide a debtor "with the basic necessities of life" so that she "will not be left destitute and a public charge." H. R. Rep. No. 95–595, p. 126 (1977).

### III

Although petitioners' counterarguments are not without force, they do not overcome the statute's text and purpose.

Petitioners' primary argument is that funds in an inherited IRA are retirement funds because—regardless of whether they currently sit in an account bearing the legal characteristics of a fund set aside for retirement—they did so at an earlier moment in time. After all, petitioners point out, "the initial owner" of the account "set aside the funds in question for retirement by depositing them in a" traditional or Roth IRA. Brief for Petitioners 21. And "[t]he [initial] owner's death does not in any way affect the funds in the account." *Ibid.*

We disagree. In ordinary usage, to speak of a person's "retirement funds" implies that the funds are currently in an account set aside for retirement, not that they were set aside for that purpose at some prior date by an entirely different person. Under petitioners' contrary logic, if an individual withdraws money from a traditional IRA and gives it to a friend who then deposits it into a checking account, that money should be forever deemed "retirement funds" because it was originally set aside for retirement. That is plainly incorrect.

More fundamentally, the backward-looking inquiry urged by petitioners would render a substantial portion of 11 U. S. C. §522(b)(3)(C)'s text superfluous. The funds contained in every individual-held account exempt from taxation under the Tax Code provisions enumerated in §522(b)(3)(C) have been, at some point in time, "retirement funds." So on petitioners' view, rather than defining the exemption to cover "retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under [the enumerated sections] of the Internal Revenue Code," Congress could have achieved the exact same result through a provision covering any "fund or account that is exempt from taxation under [the enumer-

ated sections].” In other words, §522(b)(3)(C) requires that funds satisfy not one but two conditions in order to be exempt: the funds must be “retirement funds,” and they must be held in a covered account. Petitioners’ reading would write out of the statute the first element. It therefore flouts the rule that “‘a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous.’” *Corley* v. *United States*, 556 U. S. 303, 314 (2009).

Petitioners respond that many of §522’s other exemptions refer to the “debtor’s interest” in various kinds of property. See, *e.g.,* §522(d)(2) (exempting “[t]he debtor’s interest, not to exceed [$3,675] in value, in one motor vehicle”). Section 522(b)(3)(C)’s retirement funds exemption, by contrast, includes no such reference. As a result, petitioners surmise, Congress must have meant the provision to cover funds that were at one time retirement accounts, even if they were for someone else’s retirement. Brief for Petitioners 33–34. But Congress used the phrase “debtor’s interest” in the other exemptions in a different manner—not to distinguish between a debtor’s assets and the assets of another person but to set a limit on the value of the particular asset that a debtor may exempt. For example, the statute allows a debtor to protect “[t]he debtor’s aggregate interest, not to exceed [$1,550] in value, in jewelry.” §522(d)(4). The phrase “[t]he debtor’s aggregate interest” in this provision is just a means of introducing the $1,550 limit; it is not a means of preventing debtors from exempting other persons’ jewelry from their own bankruptcy proceedings (an interpretation that would serve little apparent purpose). And Congress had no need to use the same “debtor’s interest” formulation in §522(b)(3)(C) for the simple reason that it imposed a value limitation on the amount of exemptible retirement funds in a separate provision, §522(n).

Petitioners next contend that even if their interpreta-

tion of "'retirement funds' does not independently *exclude* anything from the scope of the statute," that poses no problem because Congress actually intended that result. Reply Brief 5–6. In particular, petitioners suggest that when a sentence is structured as §522(b)(3)(C) is—starting with a broad category ("retirement funds"), then winnowing it down through limiting language ("to the extent that" the funds are held in a particular type of account)—it is often the case that the broad category does no independent limiting work. As counsel for petitioners noted at oral argument, if a tax were to apply to "sports teams to the extent that they are members of the major professional sports leagues," the phrase "sports teams" would not provide any additional limitation on the covered entities. Tr. of Oral Arg. 15.

There are two problems with this argument. First, while it is possible to conceive of sentences that use §522(b)(3)(C)'s "to the extent that" construction in a manner where the initial broad category serves no exclusionary purpose, that is not the only way in which the phrase may be used. For example, a tax break that applies to "nonprofit organizations to the extent that they are medical or scientific" would not apply to a for-profit pharmaceutical company because the initial broad category ("nonprofit organizations") provides its own limitation. Just so here; in order to qualify for bankruptcy protection under §522(b)(3)(C), funds must be both "retirement funds" and in an account exempt from taxation under one of the enumerated Tax Code sections.

Second, to accept petitioners' argument would reintroduce the surplusage problem already discussed. *Supra*, at 8–9. And although petitioners are correct that "the only effect of respondents' interpretation of 'retirement funds' would seemingly be to deny bankruptcy exemption to inherited IRAs," Reply Brief 2, as between one interpretation that would render statutory text superfluous and

another that would render it meaningful yet limited, we think the latter more faithful to the statute Congress wrote.

Finally, petitioners argue that even under the inquiry we have described, funds in inherited IRAs should still qualify as "retirement funds" because the holder of such an account can leave much of its value intact until her retirement if she invests wisely and chooses to take only the minimum annual distributions required by law. See Brief for Petitioners 27–28. But the possibility that some investors may use their inherited IRAs for retirement purposes does not mean that inherited IRAs bear the defining legal characteristics of retirement funds. Were it any other way, money in an ordinary checking account (or, for that matter, an envelope of $20 bills) would also amount to "retirement funds" because it is possible for an owner to use those funds for retirement.[4]

\* \* \*

For the foregoing reasons, the judgment of the United States Court of Appeals for the Seventh Circuit is affirmed.

*It is so ordered.*

––––––––––

[4] Petitioners also argue that inherited IRAs are similar enough to Roth IRAs to qualify as retirement funds because "the owner of a Roth IRA may withdraw his contributions . . . without penalty." Brief for Petitioners 44. But that argument fails to recognize that withdrawals of contributions to a Roth IRA are not subject to the 10 percent tax penalty for the unique reason that the contributions have already been taxed. By contrast, all capital gains and investment income in a Roth IRA are subject to the pre-59½ withdrawal penalty (with narrow exceptions for, for example, medical expenses), which incentivizes use of those funds only in one's retirement years.