**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL BENNETT; LINDA
BENNETT, as Co-Administrators of
the Estate of Maria Ann Bennett,
   *Plaintiffs–Appellees*,

v.

THE ISLAMIC REPUBLIC OF IRAN,
     *Defendant*,

v.

VISA INC.; FRANKLIN RESOURCES,
INC.,
  *Defendants-third-party-*
  *plaintiffs–Appellees*,

v.

GREENBERG AND ACOSTA
JUDGEMENT CREDITORS,
  *Plaintiff-third-party-*
  *defendant–Appellee*,

HEISER JUDGMENT CREDITORS,
  *Plaintiff-fourth-party-*
  *defendant–Appellee*,

v.

No. 13-15442

D.C. No.
3:11-cv-05807-
CRB

BANK MELLI,
          *Plaintiff-third-party-*
          *defendant–Appellant.*

MICHAEL BENNETT; LINDA
BENNETT, as Co-Administrators of
the Estate of Maria Ann Bennett,
          *Plaintiffs-Appellees*,

          v.

THE ISLAMIC REPUBLIC OF IRAN,
          *Defendant*,

          v.

VISA INC.; FRANKLIN RESOURCES,
INC.,
          *Defendants-third-party-*
          *plaintiffs–Appellees*,

          v.

GREENBERG AND ACOSTA
JUDGEMENT CREDITORS,
          *Plaintiff-third-party-*
          *defendant–Appellee*,

HEISER JUDGMENT CREDITORS,
          *Plaintiff-fourth-party-*
          *defendant–Appellee*,

No. 13-16100

D.C. No.
3:11-cv-05807-
CRB

OPINION

v.

BANK MELLI,

*Plaintiff-third-party-
defendant–Appellant.*

Appeals from the United States District Court
for the Northern District of California
Charles R. Breyer, Senior District Judge, Presiding

Argued and Submitted
April 15, 2015—San Francisco, California

Filed August 26, 2015

Before: Alex Kozinski and Susan P. Graber, Circuit Judges,
and Dee V. Benson,[*] Senior District Judge.

Opinion by Judge Kozinski

---

[*] The Honorable Dee V. Benson, Senior District Judge for the U.S. District Court for the District of Utah, sitting by designation.

## SUMMARY[**]

**Terrorism Risk Insurance Act / Foreign Sovereign
Immunities Act**

The panel affirmed the district court's denial of the
motion of Bank Melli, the national bank of the Islamic
Republic of Iran, to dismiss claims filed against it in an action
seeking enforcement pursuant to the Terrorism Risk
Insurance Act and the Foreign Sovereign Immunities Act of
terrorism-based judgments entered against Iran.

Creditors sought access to blocked Iranian assets held by
other parties but owed to Bank Melli. The panel held that the
TRIA and 28 U.S.C. § 1610(g) abrogate the asset immunity
of all of a terrorist state's instrumentalities, including those
that are not alter egos of the state. The panel held that Bank
Melli was not an indispensable party that could not be joined
under Federal Rule of Civil Procedure 19. The panel rejected
the argument that applying the TRIA and section 1610(g) to
the judgments at issue would be impermissibly retroactive
because the creditors obtained the judgments against Iran
before the statutes' enactment. The panel also rejected the
argument that Bank Melli did not own the assets.

---

[**] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

**COUNSEL**

Jeffrey A. Lamken, Robert K. Kry (argued), Lucas M. Walker, MoloLamken LLP, Washington D.C., for Appellant.

Curtis C. Mechling (argued) of Stroock & Stroock & Lavan LLP, New York, New York, and Dale K. Cathell of DLA Piper LLP, Baltimore, Maryland, and Jane Carol Norman of Bond & Norman, Washington, D.C., for Judgment Creditor Appellees.

Benjamin T. Peele, III (argued) of Baker & McKenzie LLP, Washington, D.C., and Bruce H. Jackson of Baker & McKenzie LLP, San Francisco, California for Appellees Visa, Inc. and Franklin Resources, Inc.

**OPINION**

KOZINSKI, Circuit Judge:

Congress has enacted two statutes to help victims of terrorism collect on money judgments against the foreign states responsible for sponsoring the attacks. We consider whether victims can collect from an instrumentality of a state that has sponsored terrorism when the instrumentality is a separate juridical entity that wasn't a party to the underlying lawsuit.

## I. Background

The Foreign Sovereign Immunities Act (FSIA) is the sole basis for jurisdiction over foreign states in U.S. courts. 28 U.S.C. § 1330. Under the FSIA, foreign sovereigns are

generally immune from jurisdiction, except for a few carefully delineated exceptions. One such exception is for claims arising out of acts of state-sponsored terrorism. *See id.* § 1605A.

Four groups of individuals—the Bennett, Greenbaum, Acosta and Heiser creditors—hold separate judgments obtained in U.S. courts against the Republic of Iran, based on various terrorist attacks that occurred between 1990 and 2002. The Bennett creditors are owed almost $13 million in damages for Iran's role in the 2002 bombing of a cafeteria at Hebrew University in Jerusalem. The Greenbaum creditors are owed almost $20 million for a 2001 bombing of a Jerusalem restaurant. The Acosta creditors are owed over $350 million for Iran's part in a 1990 mass shooting. And, finally, the Heiser creditors are owed over $590 million for the 1996 bombing of the Khobar Towers in Saudi Arabia. All judgments were by default, but no one disputes that they are valid and that all four sets of creditors are owed money by Iran.

However, winning a money judgment against a foreign state isn't the end of the story, because sovereign immunity separately protects the assets of a foreign sovereign from attachment. For years, the state-sponsored terrorism exception to the FSIA created an anomaly—it abrogated a foreign sovereign's immunity from judgment, but not its immunity from collection. Terrorism victims therefore had a right without a meaningful remedy.

Congress subsequently enacted two statutes closing this loophole: section 201(a) of the Terrorism Risk Insurance Act (TRIA) and 28 U.S.C. § 1610(g). Section 201 was enacted to "deal comprehensively with the problem of enforcement of

judgments rendered on behalf of victims of terrorism . . . by enabling them to satisfy such judgments through the attachment of blocked assets of terrorist parties." H.R. Rep. No. 107-779, at 27 (2002) (Conf. Rep). "Blocked assets" are those that have been seized or frozen by the federal government. The TRIA provides that "the blocked assets of [a] terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution." Terrorism Risk Insurance Act of 2002, Pub L. No. 107-297, § 201(a), 116 Stat. 2322, 2337 (codified at 28 U.S.C. § 1610 Note "Satisfaction of Judgments from Blocked Assets of Terrorists, Terrorist Organizations, and State Sponsors of Terrorism").

Section 1610(g), enacted in 2008 as an amendment to the FSIA, extended the TRIA's abrogation of asset immunity to funds that were not blocked. It provides that "the property of a foreign state against which a judgment is entered under [this statute], and the property of an agency or instrumentality of such a state, including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, is subject to attachment in aid of execution . . . upon that judgment as provided in this section." 28 U.S.C. § 1610(g).

These two statutes give creditors a theoretical avenue to collect on the judgments they've obtained. But, of course, they have to find the money first—and Iranian assets within the United States are notoriously hard to come by. An opportunity arose in 2007, when the Department of Treasury issued a blocking order prohibiting certain Iranian assets in the United States from being transferred back to Iran. That blocking order was based on Iran's illicit nuclear program, not its state-sponsored terrorism. Nonetheless, it meant that

various financial institutions had money owed to Iran sitting in accounts within the United States. The creditors here saw a rare chance to collect on their judgments and filed a complaint seeking access to $17.6 million in blocked assets held by Visa and Franklin,[1] but owed to Bank Melli—Iran's national bank. Fearing they might be liable to Bank Melli if they simply handed the money over to the creditors, Visa and Franklin responded by filing a third-party complaint to interplead Bank Melli and obtain final resolution of who was entitled to the funds. Visa and Franklin deposited the funds into the district court's registry. Bank Melli made an appearance and moved to dismiss. The district court denied that motion but certified its order for interlocutory appeal under 28 U.S.C. § 1292(b). We review de novo. *See Colony Cove Props., LLC* v. *City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011).

## II. Discussion

Bank Melli makes four distinct arguments as to why the creditors shouldn't be able to collect from the funds held by Visa and Franklin. First, it argues that the assets are protected by sovereign immunity notwithstanding the TRIA and section 1610(g), because those statutes waive sovereign immunity only for the "terrorist party"—Iran—and Bank Melli is a separate juridical entity from Iran. Second, it asserts that Federal Rule of Civil Procedure 19 requires dismissal of this entire action, because Bank Melli is an indispensable party that cannot be joined. Third, it argues

---

[1] Visa allegedly owes Bank Melli the money for the bank's facilitation of Visa cards in Iran. When the blocking order was issued, Visa invested the assets owed to Bank Melli in a mutual fund held by Franklin, an investment company.

that applying the TRIA and section 1610(g) to the judgments at issue here would be impermissibly retroactive, because the creditors obtained their judgments against Iran before the statutes' enactment. And, finally, Bank Melli claims that the frozen assets aren't subject to the TRIA or section 1610(g) because those statutes extend only to assets "owned" by the foreign entity. Because the assets here are technically in the possession of Visa and Franklin, Bank Melli argues that they aren't yet "owned" by Bank Melli.

### 1. Foreign Sovereign Immunity

Bank Melli argues that the TRIA and section 1610(g) do not abrogate the asset immunity of all of a terrorist state's instrumentalities, only those that are alter egos of the state. For this proposition, Bank Melli relies principally on the Supreme Court's holding in *First National City Bank* v. *Banco Para El Comercio Exterior de Cuba* ("*Bancec*"), that "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." 462 U.S. 611, 626–27 (1983). Under *Bancec*, the only conditions under which an instrumentality may be equated with the sovereign are (1) when it is "so extensively controlled by its owner that a relationship of principal and agent is created" or (2) when failure to regard them as equivalent "would work fraud or injustice." *Id.* at 629 (internal quotation marks omitted). Bank Melli contends that the TRIA and section 1610(g) incorporate *Bancec*'s distinction between instrumentalities that are separate juridical entities and those that are alter egos, and abrogates immunity only as to those instrumentalities that, unlike Bank Melli, fall within *Bancec*'s two exceptions.

We cannot reconcile Bank Melli's argument with the plain text of either statute. Section 201(a) of the TRIA specifically states that "the blocked assets of [a] terrorist party (*including* the blocked assets of *any agency or instrumentality* of that terrorist party) shall be subject to execution." § 201(a) (emphasis added). Bank Melli argues that the parenthetical phrase is merely illustrative and does not purport to expand the meaning of "terrorist party" beyond *Bancec*. But we must assume Congress meant what it said when it used the term "*any* agency or instrumentality." *See United States* v. *Gonzales*, 520 U.S. 1, 5 (1997). "Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *Id.* (quoting *Webster's Third New International Dictionary* 97 (1976)). Because "Congress did not add any language limiting the breadth of that word," we must read the statute as referring to all instrumentalities. *Id.*

Furthermore, Bank Melli's interpretation "flouts the rule that a statute should be construed so that effect is given to all its provisions, [and] no part will be inoperative or superfluous." *Clark* v. *Rameker*, 134 S. Ct. 2242, 2248 (2014) (internal quotation marks omitted). Because an alter ego under *Bancec is* the terrorist party, there would be no need for Congress to separately provide for attachment against instrumentalities unless it sought to extend coverage to those instrumentalities that *cannot* be equated with the terrorist party itself.

We therefore agree with the Second Circuit that it is "clear beyond cavil that Section 201(a) of the TRIA provides courts with subject matter jurisdiction over post-judgment execution and attachment proceedings against property held in the hands of an instrumentality of the judgment-debtor,

even if the instrumentality is not itself named in the judgment." *Weinstein* v. *Islamic Republic of Iran*, 609 F.3d 43, 50 (2d Cir. 2010).

Congress spoke even more clearly in section 1610(g). Section 1610(g) allows attachment against property held by an instrumentality "that is a separate juridical entity," "regardless of" the five factors that several courts—including ours—have considered when deciding whether an instrumentality is an alter ego under *Bancec*. *See Flatow* v. *Islamic Republic of Iran*, 308 F.3d 1065, 1071–72 & n.9 (9th Cir. 2002). By specifically referencing—and disavowing—*Bancec*'s test, section 1610(g) makes unmistakably clear that whether or not an instrumentality is an alter ego is irrelevant to determining whether its assets are attachable.

Bank Melli argues that section 1610(g) doesn't permit attachment because the 1955 Treaty of Amity between the U.S. and Iran requires that Iranian companies "have their juridicial status recognized," prohibits "unreasonable or discriminatory measures" against them and requires that their property be protected in accordance with international law. Treaty of Amity, Economic Relations and Consular Rights Between the United States of America and Iran, Aug. 15, 1955, 8 U.S.T. 899, 902–903. But we cannot read a 60-year-old treaty provision as barring application of the plain text of a later-enacted federal law. *See Breard* v. *Greene*, 523 U.S. 371, 376 (1998) (per curiam). In any event, there's nothing unreasonable, discriminatory or in violation of international law about waiving sovereign immunity for terrorism-based judgments. Bank Melli's assets aren't subject to attachment because it's an Iranian company, but because it's an instrumentality of a state that has sponsored terrorism.

Finally, Bank Melli reads section 1610(g)—which allows attachment in aid of execution upon judgments "as provided in this section"—to mean that attachment immunity is abrogated only if some other provision of section 1610 independently authorizes the attachment. But the other provisions of section 1610 that abrogate attachment immunity already apply to instrumentalities with separate juridical status. *See* 28 U.S.C. § 1610(a) (abrogating attachment immunity of property of a foreign state when the property is "used for commercial activity in the United States"); *id.* (defining "foreign state" by reference to section 1603(a), which states that a "foreign state" includes an instrumentality "which is a separate legal person"); *id.* § 1610(b) (abrogating attachment immunity of an instrumentality "engaged in commercial activity in the United States"). And the plain text of section 1610(g) requires only that the foreign *state* be subject to a section 1605A judgment before the property of an instrumentality becomes available for collection. *Id.* § 1610(g) (subjecting to attachment "the property of a foreign state against which a judgment is entered under section 1605A, *and* the property of an agency or instrumentality of such a state" (emphasis added)). Thus, reading section 1610(g) to require attachment immunity to be grounded in some other subsection of section 1610 would render section 1610(g) a nullity.

In short, both the TRIA and section 1610(g) provide independently sufficient grounds for abrogating Bank Melli's asset immunity for terrorism-based judgments.

### 2. Rule 19

Federal Rule of Civil Procedure 19 requires that a person be joined if he "claims an interest relating to the subject of

the action and is so situated that disposing of the action in the person's absence may . . . impair or impede the person's ability to protect the interest[] or . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a). "If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." *Id.* 19(b). Bank Melli argues that this case must be dismissed because it is an indispensable party to the lawsuit that cannot be joined, and the action cannot "in equity and good conscience" proceed without it. According to Bank Melli, the case is controlled by the Supreme Court's holding in *Republic of Philippines* v. *Pimentel*, that when "sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action must be ordered where there is a potential for injury to the interests of the absent sovereign." 553 U.S. 851, 867 (2008).

*Pimentel* is inapposite. In *Pimentel*, the judgment at issue wasn't against the sovereign—the Republic of Philippines— but rather against the estate of its former dictator, Ferdinand Marcos. The Philippines asserted a right to certain of Marcos's assets being held in the United States, out of which various creditors were trying to satisfy their judgments *against Marcos*. No one disputed that the Philippines was a required party, because—as a type of creditor itself—it clearly had a legal interest in how the funds were disposed of. Nor was there a dispute that the Philippines was sovereignly immune and therefore couldn't be joined.

Here, by contrast, the sovereign is a judgment debtor, not a creditor. Iran has already had a full and fair opportunity to

assert its interests in court. It is undisputed that Iran owes money to the creditors and that the money held by Visa and Franklin is owed to Iran. Iran, therefore, has no further interests to assert. Nor does Bank Melli have an independent interest to assert: Because its attachment immunity with respect to the funds held by Visa and Franklin is abrogated by the TRIA and section 1610(g), Bank Melli *is* Iran for the limited purposes of this interpleader action. This is solely a collection proceeding, and a judgment debtor isn't generally considered an indispensable party to an action to enforce its debts. *See Restatement (Second) of Judgments* § 8 (1982) (suggesting courts may enforce attachment of property absent the judgment debtor because he "may make an appearance to contest the court's jurisdiction over the property without thereby submitting to the jurisdiction of the court"); *cf.* Cal. Civ. Proc. Code § 708.220 ("judgment debtor . . . [is] not an indispensable party" to an enforcement proceeding). Therefore, none of Rule 19(a)'s prerequisites for dismissal has been met: The court can "accord complete relief among existing parties"; Bank Melli's ability to protect its interests isn't impaired; and there's no "substantial risk of an existing party incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a).

Even if that were not so, Rule 19(a) is inapposite because Bank Melli *can* be joined in this action. Unlike the Philippines in *Pimentel*, Bank Melli is not protected by sovereign immunity in this proceeding, because, as discussed above, Congress has abrogated the immunity of instrumentalities of terrorist parties in collection actions.

Finally, to hold, as Bank Melli urges, that Rule 19 requires dismissal in this case would effectively eviscerate section 201 of the TRIA and section 1610(g). A collection

action against a state inherently involves attempting to obtain funds owned by an entity capable of asserting sovereign immunity. If dismissal is required every time such an entity sets forth a "non-frivolous" argument as to why it shouldn't have to pay, collection will be impossible as a practical matter. Nothing in *Pimentel* or Rule 19 dictates such an absurd result.

### 3. Retroactivity

Bank Melli next argues that the creditors cannot use the TRIA and section 1610(g) to collect on their judgments because those judgments predated the enactment of the two collection statutes. When, as here, Congress has not explicitly provided for a statute's retroactive effect, we must ask whether retroactive application "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf* v. *USI Film Prods.*, 511 U.S. 244, 280 (1994). Bank Melli argues that if the TRIA and section 1610(g) permit attachment of its assets, it "would go from having no liability for [conduct predating the statutes'] enactment to being liable for the entirety of the resulting judgments."

But the TRIA and section 1610(g) do not impose retroactive *liability* on Iran—they merely provide a means of *collection* for judgments where liability has already been established. Iran was liable for its terrorism-related conduct long before the TRIA and section 1610(g) were enacted. Iran's liability results from the former 28 U.S.C. § 1605(a)(7) (now section 1605A), which permitted U.S. citizen terrorism victims to bring suit against Iran in federal court. That statute was in force at the time of Iran's unlawful conduct. The

TRIA and section 1610(g) do not attach any additional penalty to that conduct—they only create an avenue for creditors to obtain money they are already owed.

Bank Melli's real argument, therefore, must be that, even though Iran knew its conduct was unlawful and subject to liability in U.S. courts at the time it sponsored the relevant terrorist attacks, it did not know that victims would have the precise avenue for collection they now have. That hardly implicates the central concern of *Landgraf*: that the conduct a defendant engaged in was innocent at the time it occurred. Here, Iran knew it was violating the law and that it could be liable; it just believed that the procedures that existed when it acted would be insufficient to permit victims to collect on their judgments. There is no permissible reliance interest in the inadequacy of enforcement procedures. Iran assumed the risk that the money it owed in damages based on its sponsorship of terrorism would eventually be collected upon. Indeed, it's clear that the TRIA and section 1610(g) were designed precisely to provide an avenue to recovery for existing claimants with judgments against terrorist states. *See Estate of Heiser* v. *Islamic Republic of Iran*, 807 F. Supp. 2d 9, 26 (D.D.C. 2011). To say that all terrorist attacks prior to the enactment of the collection statutes cannot result in collectible judgments finds no basis in the Supreme Court's retroactivity cases and runs counter to Congress's clear intent.

### 4.  Ownership of the Assets

Bank Melli argues that the TRIA and section 1610(g) apply only to assets "owned" by Bank Melli and—while it concedes it has a 100% beneficial interest in the assets held by Visa and Franklin—it claims it doesn't "own" them yet because the funds have been blocked.

But there's more to ownership than physical possession. The question of how to determine the funds' ownership is controlled by our holding in *Peterson* v. *Islamic Republic of Iran*, 627 F.3d 1117, 1130 (9th Cir. 2010). There, we noted that "[e]nforcement proceedings in federal district court are governed by the law of the state in which the court sits" unless a federal statute dictates otherwise. *Id.* We held that the "FSIA does not provide methods for the enforcement of judgments against foreign states, only that those judgments may not be enforced by resort to immune property." We therefore concluded that "California law on the enforcement of judgments applies." *Id.* Finally, we noted that "California enforcement law authorizes a court to 'order the judgment debtor to assign to the judgment creditor . . . all or part of *a right to payment due or to become due*, whether or not the right is conditioned on future developments.'" *Id.* at 1130–31 (quoting Cal. Civ. Proc. Code § 708.510(a)) (emphasis added).

Those holdings collectively dispose of Bank Melli's argument here. Because the FSIA doesn't provide a method for enforcement, California law applies to this proceeding and, under California law, money "owed to" Bank Melli may be assigned to judgment creditors. The fact that Bank Melli is not yet in physical possession of the funds is immaterial.

\*　　　　　\*　　　　　\*

Bank Melli has set forth numerous creative arguments as to why it shouldn't be liable for Iran's debt. But this is an arena in which Congress has spoken with unmistakable clarity. Section 201 of the TRIA and 28 U.S.C. § 1610(g) permit victims of terrorism to collect money they're owed from instrumentalities of the state that sponsored the attacks.

Nothing in the text of the FSIA, Rule 19 or the Supreme Court's retroactivity cases compels a different result. The district court correctly denied Bank Melli's motion to dismiss.

**AFFIRMED.**