# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 15-20034

In the matter of: MICHAEL GLYN BROWN,

Deceased Debtor

United States Court of Appeals
Fifth Circuit

**FILED**
November 24, 2015

Lyle W. Cayce
Clerk

-----------------------------

RACHEL BROWN,

Appellant

v.

RONALD J. SOMMERS, Trustee,

Appellee

CONSOLIDATED WITH 15-20148

MICHAEL GLYN BROWN; LIONHEART COMPANY, INCORPORATED; CASTLEMANE, INCORPORATED; PRORENTALS, INCORPORATED; SUPERIOR VEHICLE LEASING COMPANY, INCORPORATED; MG BROWN COMPANY, L.L.C.

Debtors

----------------------------------------------
JUDY LENOX, Representative of Michael Glyn Brown; RACHEL BROWN,

Appellants

v.

RONALD J. SOMMERS, Trustee,

Appellee

————

Nos. 15-20034 and 15-20148

Appeals from the United States District Court
for the Southern District of Texas

Before DAVIS, PRADO, and SOUTHWICK, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Michael Glyn Brown ("Debtor") died during the pendency of his bankruptcy case. Debtor's estranged spouse, Rachel Brown ("Rachel"), and Debtor's personal representative, Judy Lenox ("Lenox"), claimed various allowances and exemptions under the Texas Estates Code in Debtor's bankruptcy case pursuant to Bankruptcy Code §§ 501, 502, and 522. The bankruptcy court ruled that neither Lenox nor Rachel was entitled to relief under the Texas Estates Code.

We dismiss the appeal to the extent Rachel seeks a probate allowance to be paid out of Debtor's bankruptcy estate. In all other respects, we affirm.

I.

The parties do not dispute the essential facts of these consolidated appeals; they dispute only the legal significance of those facts.

A.

Debtor was a successful surgeon who accumulated a great deal of wealth and property during his lifetime. For many years, Debtor resided with Rachel and their children at 9110 Memorial Drive, Houston, Texas (the "Memorial Property").

Debtor and Rachel separated in August 2010. Rachel initiated divorce proceedings in a Texas court in 2011. The divorce proceedings were acrimonious and protracted. As explained in greater detail below, Debtor and Rachel never obtained a final divorce.

2

Nos. 15-20034 and 15-20148

Debtor moved to Miami, Florida in late 2011. Rachel and her minor children continued to reside in Texas at the Memorial Property.

B.

Debtor filed a voluntary Chapter 11 bankruptcy petition in the Southern District of Florida (the "Florida Bankruptcy Court") on January 23, 2013.[1] Rachel did not join Debtor's bankruptcy petition as a joint debtor.

Debtor engaged in significant misconduct during his bankruptcy case. As a result, the Florida Bankruptcy Court conditionally dismissed Debtor's bankruptcy case and appointed a chief restructuring officer to reorganize and operate Debtor's business and personal financial affairs.

After Debtor substantially interfered with the chief restructuring officer's efforts, the Florida Bankruptcy Court reinstated Debtor's bankruptcy case, transferred the case to the United States Bankruptcy Court for the Southern District of Texas (the "Texas Bankruptcy Court"), and directed the appointment of a Chapter 11 trustee, Ronald J. Sommers (the "Trustee").

C.

Debtor died in Florida shortly thereafter. Although Debtor left numerous wills, none of the wills appear to be valid. As a result, no probate court has yet assumed jurisdiction over Debtor's probate estate, and it is unlikely that any probate proceedings will be instituted in the near future. The parties therefore agree that, for all practical purposes, Debtor "effectively . . . died intestate."

In response to Debtor's death, the Texas Bankruptcy Court converted Debtor's bankruptcy case to a liquidation under Chapter 7 of the Bankruptcy

---

[1] Chapter 11 is the chapter of the bankruptcy code that governs the reorganization of debtors. 11 U.S.C. §§ 1101-74.

3

Nos. 15-20034 and 15-20148

Code.[2] The Trustee remained assigned to the case as the chapter 7 trustee. The Texas Bankruptcy Court appointed Lenox to act as Debtor's personal representative in the bankruptcy case.

Because Debtor and Rachel never obtained a final divorce, Debtor and Rachel remained legally married at the time of Debtor's death.

D.

Lenox attempted to claim the Memorial Property as Debtor's exempt homestead under Texas Property Code § 41.001 and Texas Constitution art. 16 § 50. Soon after Lenox claimed that exemption, however, she learned that the Memorial Property was deeply encumbered by debt. Although the commencement of a bankruptcy case ordinarily imposes an automatic stay that bars creditors from pursuing debt collection activities,[3] the Texas Bankruptcy Court entered an agreed order authorizing the first lienholder to "pursue its state law remedies, . . . including foreclosure, repossession, and/or eviction" against the Memorial Property. The first lienholder accordingly foreclosed upon the Memorial Property, and Rachel and her children had to move out of the house. Thus, although the parties agree that Lenox was entitled to claim a homestead exemption under the Texas Property Code on Debtor's behalf, that exemption was essentially worthless.

---

[2] *See id.* § 1112(b)(1) ("[O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under [Chapter 11 of the Bankruptcy Code] to a case under chapter 7 . . . for cause.").

*See also* FED. R. BANKR. P. 1016 ("Death or incompetency of the debtor shall not abate a liquidation case under chapter 7 of the Code. In such event the estate shall be administered and the case concluded in the same manner, so far as possible, as though the death or incompetency had not occurred. If a reorganization, family farmer's debt adjustment, or individual's debt adjustment case is pending under chapter 11, chapter 12, or chapter 13, the case may be dismissed; or if further administration is possible and in the best interest of the parties, the case may proceed and be concluded in the same manner, so far as possible, as though the death or incompetency had not occurred.").

[3] 11 U.S.C. § 362.

4

Nos. 15-20034 and 15-20148

Lenox therefore amended her schedule of exemptions to instead claim $45,000 cash in lieu of exempt homestead property under the Texas Estates Code (the "Cash Alternative Exemption"). This exemption would benefit Rachel and her minor children.

The Trustee objected to the Cash Alternative Exemption, and the bankruptcy court sustained the Trustee's objection. Lenox now appeals that order, and Rachel joins Lenox's appeal.[4]

### E.

Whereas Lenox sought to claim exemptions on *Debtor's* behalf, Rachel also claimed various allowances and exemptions on behalf of herself and her children pursuant to 11 U.S.C. §§ 501 and 502, the provisions of the Bankruptcy Code which govern the filing and allowance of claims by creditors.[5] Rachel maintains that the Texas Estates Code entitles her to $56,250.00 cash in lieu of homestead and exempt property, plus a $496,080.00 family allowance. Rachel argues that this money should be paid to her as an administrative expense or a domestic support obligation out of Debtor's bankruptcy estate.[6]

---

[4] Lenox and Rachel first appealed the Texas Bankruptcy Court's order denying the Cash Alternative Exemption to the district court. The district court certified the case for direct appeal to the Fifth Circuit, and we allowed the direct appeal. *See* 28 U.S.C. § 158(d).

[5] Although Rachel's claim technically arose post-petition, the Texas Bankruptcy Court treated Rachel's claim as a prepetition claim pursuant to Bankruptcy Code § 348(d). *See* 11 U.S.C. § 348(d) ("A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112 [of the Bankruptcy Code] . . . shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition."). Neither party challenges the Texas Bankruptcy Court's conclusion on that issue, so we proceed under the assumption that Rachel's claim is effectively a claim for a prepetition debt.

[6] In addition to filing a claim pursuant to Bankruptcy Code §§ 501 and 502, Rachel also filed a separate document in Debtor's bankruptcy case entitled "Application for Family Allowance and Allowance in Lieu of Homestead and Exempt Property." The application does not specify which section of the Bankruptcy Code it arises under, but the claim and the

Nos. 15-20034 and 15-20148

The Trustee objected to Rachel's claim as well. The Texas Bankruptcy Court sustained the Trustee's objection to the extent Rachel requested an allowance under Texas law to be paid out of Debtor's bankruptcy estate. However, the court ruled that Rachel *was* entitled to an $18,000 allowance under *Florida* law to be paid out of Debtor's *probate* estate. That allowance was significantly smaller than the amount Rachel requested under Texas law.

The Texas Bankruptcy Court entered a final order which states that "no assets from the bankruptcy estate shall be used to pay" Rachel's claim for a probate allowance. However, because the Texas Bankruptcy Court concluded that it lacked constitutional authority to enter an award against Debtor's probate estate, the court submitted proposed findings of fact and conclusions of law to the district court respecting that issue. The district court adopted the Texas Bankruptcy Court's proposed findings and conclusions and entered a final order granting Rachel "a family allowance from the assets of the Debtor's probate estate in the total amount of $18,000, payable in a single lump sum."

Rachel now appeals. Rachel has also filed a motion to certify certain questions to the Supreme Court of Texas. Lenox is not a party to Rachel's appeal. We have consolidated Rachel's appeal with Lenox's appeal.

---

application seek identical relief. The parties discuss the claim and the application interchangeably in their briefs, so we will do the same.

Nos. 15-20034 and 15-20148

II.

"Bankruptcy court findings of fact are subject to the clearly erroneous standard of review and will be reversed only if, on the entire evidence, we are left with the definite and firm conviction that a mistake has been made."[7] We review a bankruptcy court's conclusions of law *de novo*.[8]

III.

We first conclude that the Texas Bankruptcy Court correctly denied the cash in lieu of homestead exemption that Lenox claimed on Debtor's behalf under Bankruptcy Code § 522.[9]

A.

"Under the Bankruptcy Code, the commencement of a bankruptcy case creates an estate comprising all legal and equitable interests in property . . . of the debtor as of that date."[10] However, § 522 of the Bankruptcy Code permits the debtor to exempt certain property from the bankruptcy estate if certain prerequisites are met.[11] Property exempted under § 522 is generally "not liable during or after the case for any debt of the debtor that arose . . . before the commencement of the case."[12]

---

[7] *Allison v. Roberts (In re Allison)*, 960 F.2d 481, 483 (5th Cir. 1992) (citing *New Orleans Pub. Serv., Inc. v. First Fed. Sav. & Loan Ass'n of Warner Robins, Ga. (In re Delta Towers, Ltd.)*, 924 F.2d 74 (5th Cir. 1991)).

[8] *Id.*

[9] The Trustee argues that, "in substance," Lenox's "'claim in lieu of exemption' is more like a claim under 11 U.S.C. § 502" than a request for an exemption under Bankruptcy Code § 522. Lenox disclaims any reliance on 11 U.S.C. § 502, so we need not discuss this issue.

[10] *Zibman v. Tow (In re Zibman)*, 268 F.3d 298, 302 (5th Cir. 2001) (citations omitted).

[11] Section 522 applies in bankruptcy cases under chapter 7 and 11 alike. *See* 11 U.S.C. § 103 ("[C]hapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title [with exceptions not applicable here].").

[12] *Id.* § 522(c).

Nos. 15-20034 and 15-20148

Lenox, as Debtor's personal representative, stands in Debtor's shoes. The Texas Bankruptcy Court has authorized her to claim any exemptions to which Debtor would have been entitled.

With exceptions not applicable here, a debtor may "take advantage of either the federal exemption provisions in the Bankruptcy Code or those provided under state law."[13] Here, Lenox claims an exemption on Debtor's behalf under Texas Estates Code § 353.053, which provides:

> (a) If all or any of the specific articles of exempt property described by Section 353.051(a)[14] are not among the decedent's effects, the court shall make, in lieu of the articles not among the effects, a reasonable allowance to be paid to the decedent's surviving spouse and children as provided by Section 353.054.
>
> (b) The allowance in lieu of a homestead may not exceed $45,000, and the allowance in lieu of other exempt property may not exceed $30,000, excluding the family allowance for the support of the surviving spouse, minor children, and adult incapacitated children provided by Subchapter C.

This provision permits the surviving spouse "an allowance in lieu of the [homestead] exemption" in situations where the homestead is "so [e]ncumbered with liens that its permanency as a home may be defeated at the will of the lienholder."[15]

## B.

The Texas Bankruptcy Court concluded that Lenox could not claim an exemption under Texas Estates Code § 353.053 because Debtor was only

---

[13] *Zibman*, 268 F.3d at 302 (citing 11 U.S.C. § 522(b)).

[14] Texas Estates Code § 353.051(a)(1) includes, as exempt property to be set aside, "the homestead for the use and benefit of the decedent's surviving spouse and minor children."

[15] *Ward v. Braun*, 417 S.W.2d 888, 892 (Tex. Civ. App. 1967) (applying similarly-worded predecessor to TEX. EST. CODE ANN. § 353.053 (West 2015)).

8

entitled to claim state law exemptions under Florida law. We turn first to that choice of law issue.

To determine which State's exemptions are potentially available to a debtor under § 522, we first determine whether the debtor was domiciled in a single State for the two years preceding his bankruptcy filing. If he was, then that State's exemption laws govern. If he was not, we instead inquire where the debtor was domiciled during the period starting on the date 910 days prior to filing and ending on the date 730 days prior to filing. We then apply the exemptions of the State in which the debtor was domiciled for the longest portion of that 180-day period.[16]

Instead of inquiring where the Debtor was domiciled during the 910-day period preceding his bankruptcy petition, the Texas Bankruptcy Court applied the law of the State in which the Debtor was domiciled at the time of his death. If the court had applied the correct choice of law rule, it would have concluded that Texas law, not Florida law, governs the exemptions available to Debtor under § 522. Debtor filed his bankruptcy petition on January 23, 2013. Because Debtor was not domiciled in a single State between January 24, 2011 and January 23, 2013, the court should have inquired where Debtor was domiciled between July 28, 2010 and January 24, 2011. Debtor was domiciled in Texas

---

[16] This choice of law rule comes from § 522(b)(3)(A) of the Bankruptcy Code, which allows a debtor to exempt:

> any property that is exempt under . . . State or local law that is applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located in a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place.

11 U.S.C. § 522(b)(3)(A); *see also Camp v. Ingalls (In re Camp)*, 631 F.3d 757, 760 (5th Cir. 2011).

during that entire time period. Thus, Texas law determines the state law exemptions available to Debtor.

Nevertheless, the Texas Bankruptcy Court ultimately reached the correct result when it sustained the Trustee's objection to the Cash Alternative Exemption. As we explain below, Debtor was not eligible for an exemption under the Texas Estates Code at the time he filed for bankruptcy. Thus, Lenox cannot claim an exemption under the Texas Estates Code on Debtor's behalf.

## C.

A debtor's eligibility for a state law exemption under § 522 is determined by the facts and law in existence on the date that the debtor filed his bankruptcy petition.[17] This is known as the "Snapshot Rule," and it "holds that all exemptions are determined at the time the bankruptcy petition is filed, and that they do not change due to subsequent events."[18]

Texas Estates Code § 353.053, by its plain terms, only applies if the debtor is deceased.[19] Debtor was alive on the petition date, so he was not eligible for an allowance under § 353.053 on the date he filed for bankruptcy. Thus, under the Snapshot Rule, Lenox cannot claim that exemption on Debtor's behalf under Bankruptcy Code § 522.

Federal Rule of Bankruptcy Procedure 1016 further supports our conclusion. That rule provides that, if the debtor passes away during the

---

[17] *Zibman*, 268 F.3d at 300.

[18] *Viegelahn v. Frost (In re Frost)*, 744 F.3d 384, 386 (5th Cir. 2014) (citations omitted). Even where, as here, the case is converted from a chapter 11 reorganization to a chapter 7 liquidation, exemptions are still measured by the facts and law in existence on the petition date, not the date the case was converted. *Stinson v. Williamson (In re Williamson)*, 804 F.2d 1355, 1356, 1358-62 (5th Cir. 1986).

[19] *See* TEX. EST. CODE ANN. § 353.053(a) (West 2015) (describing the allowance as "a reasonable allowance to be paid to the *decedent's* surviving spouse and children" (emphasis added)).

pendency of a bankruptcy case, "the estate shall be administered and the case concluded in the same manner, so far as possible, *as though the death . . . had not occurred.*"[20] Texas Estates Code § 353.053 would be completely inapplicable if Debtor was alive today. Thus, denying Lenox's claimed exemption under Texas Estates Code § 353.053 would be most consistent with Rule 1016's admonition to administer the case as if Debtor had never passed away.

Cases from other Circuits support our conclusion as well. In *Armstrong v. Peterson (In re Peterson),*[21] the debtor died while his bankruptcy case was still pending. The chapter 7 trustee assigned to the debtor's case "concede[d] that at the time of filing, [the debtor] was entitled to and properly claimed a homestead exemption."[22] The trustee nevertheless argued that the "homestead exemption was relinquished when [the debtor] died during the pendency of his bankruptcy without leaving a spouse or a dependent child."[23] The Eighth Circuit, applying the Snapshot Rule, disagreed. Because the debtor qualified for the exemption on the petition date, the debtor's subsequent death was "irrelevant."[24] Other courts reach the same conclusion as *Peterson.*[25]

Thus, when a debtor dies during the pendency of his bankruptcy case, he does not become ineligible for exemptions that were available to him on the petition date. A debtor's post-petition death has no effect on the exemptions

---

[20] FED. R. BANKR. P. 1016 (emphasis added).

[21] 897 F.2d 935 (8th Cir. 1990).

[22] *Id.* at 935.

[23] *Id.* at 936.

[24] *Id.* at 939.

[25] *See Ohanian v. Irwin (In re Irwin)*, 338 B.R. 839, 851 (E.D. Cal. 2006) ("[I]t is well settled that a claimed exemption (if valid under 522(b) at the time of filing) survives the death of the debtor." (citations omitted)); *In re Combs*, 166 B.R. 417, 417-21 (Bankr. N.D. Cal. 1994); *In re Friedman*, 38 B.R. 275, 275-77 (Bankr. E.D. Pa. 1984).

Nos. 15-20034 and 15-20148

available to him. Therefore, a debtor cannot *become* eligible for exemptions that were *unavailable* to him by dying after the filing date.[26]

Lenox attempts to avoid the foregoing result in two ways.[27] She first argues that this Court's decisions in *Zibman v. Tow (In re Zibman)*[28] and *Viegelahn v. Frost (In re Frost)*[29] render the Snapshot Rule inapplicable under the facts of this case. We disagree. *Zibman* and *Frost* hold that, if a debtor is eligible for a state law exemption at the time he files bankruptcy, but the debtor fails to comply with the State's requirements for remaining eligible for that exemption throughout the entirety of the bankruptcy case, then the debtor loses the exemption. Neither *Zibman* nor *Frost* holds that a debtor may *become* eligible for an exemption that was originally unavailable to him when circumstances change during the pendency of the bankruptcy. Here, Debtor was not eligible for an exemption under Texas Estates Code § 353.053 at the time he filed bankruptcy, so his subsequent death does not affect the availability of the exemption.

Secondly, Lenox argues that Texas Estates Code § 353.053 is merely a "different form of the homestead exemption found in the Texas Constitution

---

[26] Courts regularly hold that post-petition changes in circumstances cannot render a debtor eligible for exemptions for which he was ineligible on the petition date. *See In re Braxton*, 350 B.R. 710, 710-12 (Bankr. W.D. La. 2005) (debtor who was temporarily unemployed on the petition date could not claim exemption available only to employed persons, even though debtor "had returned to gainful employment by the time of the hearing"); *In re Dawson*, 266 B.R. 355, 356-59 (Bankr. N.D. Tex. 2001) (debtor who was married on petition date could not claim a homestead different from that of his spouse, even though divorce proceedings were pending on petition date and completed shortly thereafter); *In re Rivera*, 5 B.R. 313, 314-16 (Bankr. M.D. Fla. 1980) (holding that single debtor cohabitating with unmarried woman could not claim "head of household" exemption, even though woman gave birth to child three days after bankruptcy petition was filed, because as of the date debtor filed for bankruptcy, debtor had no legal or moral obligation to continue support).

[27] Lenox raises other arguments as well, but they are all either inadequately briefed or unsupported by authority, so we will not discuss them here.

[28] 268 F.3d 298.

[29] 744 F.3d 384.

and the Texas Property Code." To reiterate, the parties do not dispute that Debtor was entitled to claim a homestead exemption under the *Texas Constitution and the Texas Property Code* on the date he filed bankruptcy; the problem is that that exemption is worthless because the Texas Bankruptcy Court authorized the first lienholder to foreclose on the Memorial Property. The relevant homestead exemption provision of the Texas Property Code does not contain a cash-in-lieu of homestead provision similar to Texas Estates Code § 353.053.[30] The question, then, is whether Lenox can exchange a valueless homestead exemption under the *Property* Code for a valuable cash-in-lieu-of-homestead exemption under the *Estates* Code.

Lenox argues that the answer to that question is yes. According to Lenox, Texas Estates Code § 353.053 "is simply an extension of the Texas Property Code and represents an alternative and different form of the real property homestead exemption" under Texas Property Code § 41.001. She relies upon this Court's statements in *Frost* and *Zibman* that, "[w]hen claiming an exemption under state law, . . . 'it is the *entire* state law applicable on the filing date that is determinative.'"[31] Thus, argues Lenox, "the homestead exemption, even the cash alternative, relates back to the homestead owned by [Debtor] at the commencement of the case."

As Lenox's counsel conceded at oral argument, however, there is no authority to support her assertion that § 353.053 is merely a different form of the homestead exemption provided by the Texas Property Code and the Texas Constitution. Indeed, the two exemptions are materially different; Texas Estates Code § 353.053 applies only in probate proceedings where there is a "decedent," and it contains a cash-in-lieu provision that the relevant chapter

---

[30] *See* TEX. PROP. CODE ANN. § 41.001 (West 2015).
[31] *Frost*, 744 F.3d at 386 (emphasis in original) (quoting *Zibman*, 268 F.3d at 304).

of the Texas Property Code lacks. Thus, if Debtor were still alive, a cash-in-lieu exemption under Texas Estates Code § 353.053 would be completely unavailable to him. Federal Rule of Bankruptcy Procedure 1016 commands us to administer the case as if Debtor's death had not occurred. As a result, Debtor's eligibility for a homestead exemption under the Texas Property Code does not, in derogation of the Snapshot Rule, retroactively entitle him to a exemption under Texas Estates Code § 353.053 for which he was ineligible on the petition date.

In sum, the Snapshot Rule bars Lenox from claiming an exemption on Debtor's behalf pursuant to Texas Estates Code § 353.053 and Bankruptcy Code § 522. We therefore affirm the Texas Bankruptcy Court's order denying the claimed exemption.[32]

## IV.

Having disposed of Lenox's appeal, we turn now to Rachel's appeal. Whereas Lenox sought to claim exemptions on *Debtor's* behalf under § 522 of the Bankruptcy Code, Rachel seeks a family probate allowance and a cash-in-lieu-of-homestead exemption on her *own* behalf as a creditor of Debtor's estate. Rachel claims that Texas Estates Code §§ 353.101(a),[33] 353.053,[34] 353.054,[35]

---

[32] We need not address Rachel's argument that the Texas Bankruptcy Court improperly struck documents from the record on appeal. The documents excluded from the record would not change our conclusion that Debtor was ineligible for the Cash Alternative Exemption at the time he declared bankruptcy.

[33] "[T]he court shall fix a family allowance for the support of the decedent's surviving spouse, minor children, and adult incapacitated children." TEX. EST. CODE ANN. § 353.101(a) (West 2015).

[34] "If all or any of the specific articles of exempt property described by Section 353.051(a) are not among the decedent's effects, the court shall make, in lieu of the articles not among the effects, a reasonable allowance to be paid to the decedent's surviving spouse and children . . ." *Id*. § 353.053(a).

[35] "The executor or administrator of an estate shall pay an allowance in lieu of exempt property in accordance with this section." *Id*. § 353.054(a).

Nos. 15-20034 and 15-20148

and 353.055[36] entitle her to $56,250.00 as an allowance in lieu of homestead and exempt property, plus a $496,080.00 family allowance.

As noted above, the Texas Bankruptcy Court sustained the Trustee's objection to the extent Rachel requested an allowance under Texas law to be paid out of Debtor's bankruptcy estate. However, the court granted Rachel an $18,000 allowance under *Florida* law to be paid out of Debtor's *probate* estate.

Rachel maintains that the Texas Bankruptcy Court should have awarded her the much larger allowance she requested under Texas law. She also claims that the court should have allowed her to recover the allowance out of Debtor's bankruptcy estate, instead of Debtor's probate estate alone.

A.

We first agree with the Texas Bankruptcy Court that Rachel is not eligible for a probate allowance under Texas law.

A decedent's survivor is eligible for a probate allowance under Texas law only if the decedent was domiciled in the State of Texas at the time of his or her death.[37] A person is domiciled in a State if he or she (1) resides within the State and (2) intends to remain in that State for the indefinite future.[38]

---

[36] "An allowance in lieu of any exempt property shall be paid in the manner selected by the decedent's surviving spouse or children of legal age, or by the guardian of the decedent's minor children, or by the guardian of each adult incapacitated child or other appropriate person, as determined by the court, if there is no guardian . . ." *Id*. § 353.055(a).

[37] *Hopkins v. Wright*, 17 Tex. 30, 39 (1856) ("The rule is well settled, that the succession to the personal estate of a decedent is to be governed by the law of the country in which he was domiciled at the time of his death."); *Moore v. Moore*, 430 S.W.2d 247, 251 (Tex. Civ. App. 1968) (applying predecessor to the Texas Estates Code) ("The family of a decedent is not entitled to an allowance in lieu of a homestead out of property in the course of administration within the state, unless the decedent at the time of death was domiciled in the state." (quoting 18 TEX. JUR. 2D, DECEDENTS' ESTATES, § 497, p. 405)).

[38] *Acridge v. Evangelical Lutheran Good Samaritan Soc'y*, 334 F.3d 444, 448 (5th Cir. 2003); *Alston v. Ulman*, 39 Tex. 157, 159 (1873).

15

Nos. 15-20034 and 15-20148

We emphasize for the sake of clarity that, unlike Lenox, Rachel is not pursuing an exemption on the Debtor's behalf pursuant to Bankruptcy Code § 522. As a result, neither the Snapshot Rule nor § 522(b)(3)(A)'s choice of law rule govern Rachel's claim under Texas law. Debtor's domicile at the time of his death, not his domicile at the time of his bankruptcy filing or during the 910-day period preceding his bankruptcy petition, determines Rachel's eligibility for the allowances she seeks.

The Texas Bankruptcy Court found, and the district court agreed, that Debtor was domiciled in Florida, not Texas, at the time of his death.[39] We must defer to the lower courts' determination of domicile unless it is clearly erroneous.[40]

The record supports the Texas Bankruptcy Court's finding. Debtor lived in Florida for approximately two years prior to his death. There is no evidence Debtor had intended to move away from Florida before he died. The Texas Bankruptcy Court also found that Debtor maintained valuable assets in Florida. Although Rachel is correct that Debtor (1) maintained some connections with Texas while living in Florida and (2) possessed valuable assets located within the state of Texas, the Texas Bankruptcy Court's finding is not clearly erroneous. The Texas Bankruptcy Court appropriately found that Debtor was not domiciled in Texas at the time of his death, so Rachel may not claim probate allowances under Texas law.

---

[39] Rachel suggests that the Texas Bankruptcy Court never made a finding of fact with respect to Debtor's domicile, so there is no factual finding to which this Court may defer. Rachel is incorrect; the Texas Bankruptcy Court did indeed make the requisite factual finding. *See* Case No. 15-20034, ROA 8939 (stating in the Conclusions of Law section of the opinion that Debtor's "domicile at death was Florida"); *id.* at 8905 ("[T]o the extent that any Conclusions of Law are construed as Findings of Fact, they are adopted as such.").

[40] *Coury v. Prot*, 85 F.3d 244, 251 (5th Cir. 1996) (citing 1 J. MOORE, MOORE'S FEDERAL PRACTICE § 0.74[3.–3] n. 29); *Dos Santos v. Belmere Ltd. P'ship*, 516 F. App'x 401, 403 (5th Cir. 2013) (per curiam).

Nos. 15-20034 and 15-20148

Rachel attempts to avoid the foregoing result by arguing that, under Texas law, it is the domicile of the *surviving spouse and children*, *not* the domicile of the *decedent*, which determines whether the survivors may claim allowances under Texas probate law. Thus, argues Rachel, even if Debtor was domiciled in Florida at the time of his death, Texas law still applies because Rachel and her children live in Texas.

Rachel's argument is contrary to Texas precedent. As the Court of Civil Appeals of Texas, Dallas stated in *Moore v. Moore*: "It is well established in Texas that it is *the domicile of the decedent, not the widow,* which determines the right of the widow to an allowance."[41]

Rachel argues that this Court should disregard *Moore* because it "is based upon an improper interpretation of" Texas Supreme Court precedent. Although we are not bound by decisions of intermediate state appellate courts if we are "convinced by other persuasive data that the highest court of the state would decide otherwise,"[42] we are not persuaded that the Texas high court would disagree with *Moore* because the Supreme Court of Texas has repeatedly held that it is the domicile of the decedent, not the survivor, which determines the survivor's eligibility for allowances and exemptions under Texas's probate laws.[43] We must therefore follow *Moore* and the Texas Supreme Court cases upon which it relies.

---

[41] *Moore*, 430 S.W.2d at 251 (emphasis added) (citing 18 TEX. JUR. 2D, DECEDENTS' ESTATES, § 497, p. 405).

[42] *Arete v. Gunnerman*, 643 F.3d 410, 418 (5th Cir. 2011) (quoting *Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624 (5th Cir. 2000)).

[43] *See Alston*, 39 Tex. at 157-59 (holding that the decedent's children were not entitled to a substituted allowance in lieu of homestead under Texas law, even though the children had become permanent residents of Texas, because the decedent was not himself a Texas domiciliary at the time of his death); *Green v. Crow*, 17 Tex. 180, 189-90 (1856) (holding that a widow's homestead rights under Texas's probate laws "are not dependent on the whereabouts of her residence after the death of her husband. If the husband had a domicile at the time of his death, she is, under the section in case of insolvency of the estate, entitled in full property to that domicile.").

Nos. 15-20034 and 15-20148

Rachel correctly notes that the Texas cases cited above are decades or even centuries old. She therefore asserts that these cases are no longer valid after the 1971 promulgation of the Restatement (Second) of Conflict of Laws. According to Rachel, if the Supreme Court of Texas applied the seven-factor test set forth in § 6 of the Restatement (Second),[44] it would conclude that Rachel's domicile, not Debtor's domicile at the time of his death, determines Rachel's eligibility for a state law probate allowance.

We need not decide whether Restatement (Second) of Conflict of Laws § 6 would require a different result under the facts of this case. The American Law Institute cannot overrule the Supreme Court of Texas. Although the Texas Supreme Court has adopted the Restatement (Second) in *tort* cases,[45] it has never held that § 6 of the Restatement (Second) governs a survivor's eligibility for probate allowances. Although one intermediate appellate court in Texas has cited the Restatement (Second) in a probate case, that court nonetheless followed the Supreme Court of Texas's longstanding rule that "[t]he laws of the domicile of a person who dies intestate control in the succession of movable or personal property of his estate."[46] In other words, even Texas cases that postdate the Restatement (Second) look to the domicile of the decedent rather than the domicile of the survivors. Thus, we have no reason to believe that the Supreme Court of Texas would jettison its longstanding rule that it is the

---

[44] These seven factors are: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability, and uniformity of result; and (g) ease in the determination and application of the law to be applied. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971).

[45] *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979).

[46] *In re Garcia-Chapa*, 33 S.W.3d 859, 861-62 (Tex. App. 2000) (citing *Van Hoose v. Moore*, 441 S.W.2d 597, 617 (Tex. Civ. App. 1969); *Owen v. Younger*, 242 S.W.2d 895, 898 (Tex. Civ. App. 1951); *Saner Ragley Lumber Co. v. Spivey*, 238 S.W. 912, 915 (Tex. Comm'n App. 1930)).

decedent's domicile, not the survivor's domicile, which governs the survivor's eligibility for a probate allowance under Texas law.

Rachel argues in the alternative that, even if the domicile of the decedent would *ordinarily* determine the availability of probate allowances under Texas law, the survivor's domicile should instead control where, as here, "the decedent moved to a foreign state shortly before his death, created his alleged domicile in violation of court orders and his surviving wife and children have consistently been domiciled in Texas since before the decedent moved away from them." Under the unusual circumstances of this case, argues Rachel, the Court should not inquire where Debtor was domiciled at the time of his death, but should instead inquire whether Rachel and her children were "'forum' shopping to get a better family allowance." Again, however, all of the relevant Texas cases state that it is the domicile of the debtor, not that of the surviving spouse and children, that matters. Texas precedent contains no indication that the Supreme Court of Texas would recognize Rachel's proposed exception to its well-settled domicile rules. In the absence of any such indication, we will not read such an exception into Texas law.

Rachel also asks us to certify various questions to the Supreme Court of Texas. Essentially, Rachel wants the Supreme Court of Texas to modify its well-settled domicile rules. For the reasons explained above, however, "there is no reason to think that the Texas Supreme Court would deviate from its well-established rule and therefore no reason to certify the question to that court."[47] We therefore deny Rachel's motion.

In sum, Rachel is not entitled to the allowances she claims under Texas law because Debtor was not a Texas domiciliary at the time of his death. It is

---

[47] *Compass Bank v. King, Griffin & Adamson P.C.*, 388 F.3d 504, 505 n.1 (5th Cir. 2004) (per curiam).

irrelevant that Rachel and her children are Texas domiciliaries. The lower courts therefore properly denied Rachel's request for relief under Texas law.

B.

Because Rachel is ineligible for a probate allowance under Texas law, the Texas Bankruptcy Court instead awarded Rachel a probate allowance under Florida law. The Texas Bankruptcy Court concluded that Florida law limits a survivor's family allowance to $18,000 and does not authorize an allowance in lieu of homestead or exempt personal property. Therefore, the Texas Bankruptcy Court limited Rachel's recovery to $18,000.

Rachel does not challenge the Texas Bankruptcy Court's interpretation of Florida law; she merely disputes that Florida law applies at all. Nor does the Trustee challenge the $18,000 allowance in any way. Because neither party assigns any error to the Texas Bankruptcy Court's application of Florida law, we affirm the $18,000 award.

C.

The Texas Bankruptcy Court reasoned that Rachel should recover the $18,000 allowance out of Debtor's probate estate. The court was persuaded that, because Debtor left "myriad wills" of "questionable validity," and because "no one named as executor in any of the Debtor's numerous wills has had the gumption to probate any of these wills," it was unlikely that anyone would ever institute probate proceedings in state court. The court observed that it "remain[ed] in possession of the Debtor's exempt assets – which comprise the Debtor's probate estate – because there is no executor or probate court to which this Court could set them aside and entrust them." Relying on the authority of *Seiden v. Southland Chenilles*, 195 F.2d 899 (5th Cir. 1952), *Hull v. Dicks*, 235

U.S. 584 (1915),[48] and *Querner v. Querner (In re Querner)*, 7 F.3d 1199 (5th Cir. 1993), the court concluded that it "ha[d] an obligation to act to award a family allowance that cannot or is not being resolved in state court."

However, although the Texas Bankruptcy Court concluded that it possessed *jurisdiction* over the *assets* in Debtor's probate estate, it concluded that it lacked *constitutional authority* to enter a final order on Rachel's claim against the probate estate. The Texas Bankruptcy Court therefore submitted proposed findings of fact and conclusions of law on that issue to the district court. The district court adopted the Texas Bankruptcy Court's proposed findings and conclusions in their entirety and ordered "that Rachel Brown shall receive a family allowance from the assets of Debtor's probate estate in the total amount of $18,000.00, payable in a single lump sum." Thus, Rachel stands to receive $18,000 to be paid out of property that Lenox successfully claimed as exempt on Debtor's behalf in the bankruptcy case.[49]

---

[48] Although the Texas Bankruptcy Court relied on *Seiden* and *Hull* to support its conclusion that Rachel could recover the family allowance out of Debtor's *probate* estate, the court also concluded that neither *Seiden* nor *Hull* remain good law to the extent those decisions would require the family allowance to be paid out of Debtor's *bankruptcy* estate. As we explain below, however, we have no occasion to decide whether Congress has overruled *Seiden* and *Hull* in whole or in part.

[49] *See In re Lucio*, 251 B.R. 705, 709 (Bankr. W.D. Tex. 2000) ("If a bankruptcy is pending when a person dies, the only assets that go into the probate estate are the property claimed as exempt in the debtor's bankruptcy case . . . and any property acquired by the debtor after the commencement of the bankruptcy case. Conversely, the only debts for which the probate estate is liable are those incurred by the decedent after the filing of the bankruptcy petition. The result is that the deceased debtor's pre-bankruptcy debts are discharged in the bankruptcy, and the deceased debtor's exempt assets are passed to the probate estate free of that debt." (internal citations omitted)).

As the Texas Bankruptcy Court noted, "the only property in the Debtor's probate estate is property exempted from this bankruptcy estate, since property acquired by an individual Chapter 11 debtor after commencement of the case is now included as property of the bankruptcy estate." *See* 11 U.S.C. § 1115(a)(1) (defining property of the estate for an individual in Chapter 11 to include property "that the debtor acquires after the commencement of the case").

Nos. 15-20034 and 15-20148

On appeal, neither party objects to the lower courts' authority to authorize payment of the $18,000 allowance to Rachel out of the probate estate.[50] Under normal circumstances, the proper procedure would have been for the Texas Bankruptcy Court to transfer the exempt property – which is not in the bankruptcy estate – to a state probate court.[51] Then Rachel would apply to the probate court for the family allowance. But, as the Texas Bankruptcy Court found, there is no likelihood that state court probate proceedings will ever be initiated. Under these peculiar circumstances, we agree that the lower courts did the only practical thing they could do: pay Rachel the $18,000 out of the exempt assets. Because neither party objects to the lower courts' authority to do so, we will not disturb the district court's order paying the family allowance out of the probate estate.

D.

Although Rachel does not challenge the federal courts' *authority* to pay the $18,000 allowance out of the probate estate, she would prefer to be paid out of Debtor's bankruptcy estate. The Texas Bankruptcy Court ruled that Rachel's probate claims, "under the law upon which they are based, are only payable out of the Debtor's probate estate, and therefore may not be paid out of the Debtor's separate and distinct bankruptcy estate." The Texas Bankruptcy Court therefore ordered that "no assets from the bankruptcy estate shall be used to pay" Rachel's claim for a probate allowance.

Rachel challenges that order on appeal. As the Trustee correctly argues, however, we lack appellate jurisdiction to decide this issue. We do not review

---

[50] The Trustee raised such an objection below, but he has abandoned his objection on appeal.

[51] *See In re Spiser*, 232 B.R. 669, 674 (Bankr. N.D. Tex. 1999) ("[T]his court does not have jurisdiction to determine exemptions in the probate estate; that is a matter for the Texas courts.").

bankruptcy court orders that have not been reviewed by the district court.[52] Whereas the Texas Bankruptcy Court concluded that it lacked authority to enter a final order on Rachel's claim to the extent she sought payment from the *probate* estate, and therefore submitted proposed findings of fact and conclusions of law to the district court respecting that issue, the Texas Bankruptcy Court concluded that it *did* possess constitutional authority to enter a final order denying Rachel's claim to the extent she sought payment from the *bankruptcy* estate.[53] As a result, the Texas Bankruptcy Court entered a final order which states that "no assets from the bankruptcy estate shall be used to pay" Rachel's claim for a probate allowance. Rachel never filed a notice of appeal from the Texas Bankruptcy Court's final order as required by Federal Rule of Bankruptcy Procedure 8002.[54] Thus, we lack appellate jurisdiction over Rachel's claim against the bankruptcy estate.[55]

---

[52] *See Smith v. Gartley (In re Berman-Smith)*, 737 F.3d 997, 998-1003 (5th Cir. 2013) (holding that the Court of Appeals lacks appellate jurisdiction unless the appellant files a timely notice of appeal with the bankruptcy clerk as required by FED. R. BANKR. P. 8002).

[53] The parties do not challenge, and we have no reason to question, the Texas Bankruptcy Court's constitutional authority to enter this final order.

[54] Rachel did argue in her objections to the Texas Bankruptcy Court's proposed findings of fact that the Texas Bankruptcy Court "was in error when it found that the family allowance can only be paid out of the probate estate." However, an objection to proposed findings and conclusions is not a substitute for a notice of appeal. *Compare* FED. R. BANKR. P. 9033(b) ("Within 14 days after being served with a copy of the proposed findings of fact and conclusions of law a party may serve and file with the clerk written objections which identify the specific proposed findings or conclusions objected to and state the grounds for such objection."), *with* FED. R. BANKR. P. 8002(a)(1) ("Except as provided in subdivisions (b) and (c), a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed."). Rachel never filed a notice of appeal from the Texas Bankruptcy Court's final order denying her claim against Debtor's bankruptcy estate, so that order was not before the district court when it overruled Rachel's objections to the Texas Bankruptcy Court's proposed findings and conclusions.

[55] *See Berman-Smith*, 737 F.3d at 998-1003.

Nos. 15-20034 and 15-20148

We therefore dismiss the appeal to the limited extent that Rachel challenges the Texas Bankruptcy Court's final order denying her claim against Debtor's bankruptcy estate.[56]

V.

For the foregoing reasons, we dismiss Rachel's appeal to the extent she challenges the Texas Bankruptcy Court's final order providing that "no assets from the bankruptcy estate shall be used to pay" Rachel's claim for a probate allowance. We affirm in all other respects.

AFFIRMED in part and APPEAL DISMISSED in part. Motion to certify questions to the Supreme Court of Texas DENIED.

---

[56] Rachel claims that she may recover her probate allowance directly out of the bankruptcy estate under the authority of *Seiden*, 195 F.2d 899, and *Hull*, 235 U.S. 584. The Trustee argues, and the Texas Bankruptcy Court agreed, that Congress partially overruled *Seiden* and *Hull* when it enacted the Bankruptcy Code in 1978. Because we lack appellate jurisdiction over this issue, we express no view regarding the continuing vitality of *Seiden* and *Hull*.