In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 14-3585

IN RE: ANNA F. ROBINSON

*Debtor-Appellee.*

APPEAL OF:    CYNTHIA A. HAGAN

*Trustee-Appellant.*

---

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:13-cv-01239-SMY — **Staci M. Yandle**, *Judge.*

---

ARGUED SEPTEMBER 29, 2015 — DECIDED FEBRUARY 4, 2016

---

Before WOOD, *Chief Judge*, and EASTERBROOK and RIPPLE,
*Circuit Judges.*

RIPPLE, *Circuit Judge*. Anna F. Robinson filed a Chapter 7
bankruptcy petition in the Southern District of Illinois seeking
a discharge of unsecured debts. Ms. Robinson claimed an ex-
emption for a rare, first edition Book of Mormon under the
Illinois personal property exemption statute, 735 ILCS 5/12-
1001(a), which provides an exemption for a bible. The bank-
ruptcy court denied the exemption, but the district court re-
versed. Because we agree with the district court that the plain

wording of the Illinois personal property exemption statute allows the exemption for Ms. Robinson's Book of Mormon, we affirm the district court's judgment.

# I

# BACKGROUND

## A.

On February 25, 2013, Ms. Robinson filed a Chapter 7 bankruptcy petition in the Southern District of Illinois seeking to discharge unsecured debt in the amount of $23,834.00. Among her scheduled personal property, Ms. Robinson listed an "old Morm[o]n bible" of unknown value.[1] Ms. Robinson noted that she "ha[d] been told that there is a 100% exemption for bibles but valuable bibles may or may not be covered under such exemption."[2]

A trustee was appointed and, at the meeting of creditors, inquired about the Book of Mormon. Ms. Robinson confirmed that it was a rare, 1830 first edition Book of Mormon and that she possessed several additional copies of the Book of Mormon in print or digital form. On the basis of this information, the trustee filed an objection to the claimed exemption. The trustee acknowledged that 735 ILCS 5/12-1001(a)[3] provides an

---

[1] Bankr. R.1 at 12.

[2] *Id.*

[3] 735 ILCS 5/12-1001, which designates exempt personal property, states in relevant part: "The following personal property, owned by the debtor, is exempt from judgment, attachment, or distress for rent: (a) The necessary wearing apparel, bible, school books, and family pictures of the debtor and the debtor's dependents[.]"

exemption for a "bible"; nevertheless, the trustee asserted that, given that Ms. Robinson owned many other copies of the Book of Mormon, the valuable first edition should be used for the benefit of the creditors.

During a hearing on the trustee's objection, Ms. Robinson testified that, in 2003, while employed at the local public library, she made an agreement with the library director that, if she cleaned out a storage area, she could use the area as an office and keep any books she found. While cleaning, Ms. Robinson found the Book of Mormon and later had it authenticated as an 1830 first edition Book of Mormon, one of only 5,000 copies printed by Joseph Smith. At the time, it was valued at $10,000.00. Ms. Robinson explained that she stores the Book of Mormon in a Ziploc bag to preserve it. She does not use it regularly, but does take it out occasionally to show her children and fellow church members.

On August 20, 2013, the bankruptcy court entered an order sustaining the trustee's objection. The bankruptcy court believed that "allowing the debtor's exemption w[ould] violate the intent and purpose of the statute," namely "to protect a bible of ordinary value so as not to deprive a debtor of a worship aid."[4]

Ms. Robinson moved to reconsider on the ground that the bankruptcy court's opinion was "unconstitutional, as it use[d] the exemption statute to interfere with a person's free exercise of their religion as they choose to exercise it" and that it interfered with her right to choose which items to exempt.[5] The

---

[4] Bankr. R.22 at 7–8.

[5] Bankr. R.27 at 3.

bankruptcy court denied the motion because Ms. Robinson's arguments did not "fall into any of the exceptions under which a Motion for Reconsideration may be brought. Further, there [wa]s nothing in these arguments that indicate[d] that they were unavailable when the matter was previously argued."[6]

Ms. Robinson appealed. She argued to the district court that the bankruptcy court's decision ignored the plain meaning and structure of the statute, as well as the judicial rule that bankruptcy exemption statutes should be construed liberally in favor of the debtor. The district court determined that, because the legislature did not place a monetary limitation on the items exempted in 735 ILCS 5/12-1001(a), a bible is exempt without regard to its value. The district court therefore vacated the bankruptcy court's order denying the exemption; it also vacated the bankruptcy court's order denying the motion to reconsider.[7] The trustee timely appealed.

## II

## DISCUSSION

We review a bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *Matter of FedPak Sys.*,

---

[6] Bankr. R.40 at 3.

[7] On appeal, the trustee also argues at length that the district court erred in vacating the bankruptcy court's order denying Ms. Robinson's motion for reconsideration. Because we, like the district court, conclude that the bankruptcy court's underlying judgment in favor of the trustee was in error, any arguments concerning the motion to reconsider are moot.

*Inc.*, 80 F.3d 207, 211 (7th Cir. 1996). Whether a debtor is entitled to a bankruptcy exemption is a question of law to be reviewed de novo. *Fowler v. Shadel*, 400 F.3d 1016, 1017 (7th Cir. 2005).

When interpreting a statute, here the Illinois personal-exemption statute, 735 ILCS 5/12-1001, "the primary rule of statutory construction is to ascertain and effectuate the legislature's intent. In doing so a court looks first to the statutory language itself. If the language is clear, the court must give it effect and should not look to extrinsic aids for construction." *In re Marriage of Logston*, 469 N.E.2d 167, 171 (Ill. 1984); *see also In re Barker*, 768 F.2d 191, 194 (7th Cir. 1985) (applying same).

Our analysis, therefore, begins with the language of the statute, which provides in relevant part:

> The following personal property, owned by the debtor, is exempt from judgment, attachment, or distress for rent:
>
> (a) *The necessary wearing apparel, bible, school books, and family pictures of the debtor and the debtor's dependents*;
>
> (b) The debtor's equity interest, not to exceed $4,000 in value, in any other property;
>
> (c) The debtor's interest, not to exceed $2,400 in value, in any one motor vehicle;
>
> (d) The debtor's equity interest, not to exceed $1,500 in value, in any implements, professional books, or tools of the trade of the debtor; … .
>
> … .

> If a debtor owns property exempt under this
> Section and he or she purchased that property
> with the intent of converting nonexempt prop-
> erty into exempt property or in fraud of his or
> her creditors, that property shall not be exempt
> from judgment, attachment, or distress for rent.
> Property acquired within 6 months of the filing
> of the petition for bankruptcy shall be pre-
> sumed to have been acquired in contemplation
> of bankruptcy.
>
> The personal property exemptions set forth in
> this Section shall apply only to individuals and
> only to personal property that is used for per-
> sonal rather than business purposes.

735 ILCS 5/12-1001 (emphasis added).

The trustee acknowledges that "the term 'bible' has a well settled meaning when standing alone"—"a religious text."[8] Moreover, it is not disputed that the Book of Mormon falls within this meaning. Finally, there is nothing in the wording of subsection (a) that imposes a dollar limit on the items listed therein. The trustee nevertheless maintains that the meaning of subsection (a), as applied to Ms. Robinson's Book of Mormon, "is not so clear" when it is "considered in the context of Section 1001."[9]

The trustee, however, does not point to anything in the language or structure of 735 ILCS 5/12-1001 that modifies or narrows the term as it is generally understood. As already

---

[8] Appellant's Br. 13–14.

[9] *Id.* at 13.

noted, nothing suggests that the legislature meant to impose a dollar-value limitation on the items set forth in subsection (a). Indeed, given that other subsections of 735 ILCS 5/12-1001 include dollar-value limitations, it seems clear that the legislature *did not* intend to limit subsection (a) to items under a certain value.

The plain wording of the statute does support the trustee's argument that the exemption applies to *one* "bible." However, the trustee does not seek simply to limit Ms. Robinson to one Book of Mormon; the trustee seeks to limit Ms. Robinson to one Book of Mormon *of negligible monetary value*. Given that the legislature did not place a dollar limit on the subsection (a) exemptions as it did with exemptions in other subsections, this argument appears at odds with the wording and structure of the personal property exemption statute.[10]

Moreover, the "of negligible value" construction adopted by the bankruptcy court, and urged by the trustee, does not find support in case law. In *In re Deacon*, 27 F. Supp. 296 (S.D. Ill. 1939), the court determined that "one watch, one consistory ring, [and] one diamond shirt stud" fell within the category of "necessary wearing apparel." If the statute were to be strictly construed to provide the debtor with the "bare necessities," none of these items should have been exempted. Moreover, in *In re Barker*, 768 F.2d 191 (7th Cir. 1985), we

---

[10] Although the trustee does not renew the argument in this court, there also is no merit to the argument that the term "necessary" applies to all of the terms in subsection (a) as opposed to simply "wearing apparel." Although "necessary" certainly could be applied to the terms "wearing apparel," "bible," and "school books," it would be difficult to say that any "family pictures" could be considered a necessity.

noted that, in a case "where an exemption statute might be interpreted either favorably or unfavorably vis-á-vis a debtor, we should interpret the statute in a manner that favors the debtor." *Id.* at 196 (applying Illinois law).

Despite the clear language of subsection (a), the trustee maintains that the term "bible" is "susceptible to various interpretations and requires an examination of the legislative history to discern the legislature's intent."[11] She relies on this court's decision in *In re Barker* for support. *In re Barker*, however, did not speak to the meaning of 735 ILCS 5/12-1001(a). Instead, it addressed the issue whether the Illinois personal property exemption statute entitled a debtor to "stack" exemptions. *In re Barker*, 768 F.2d at 192. Specifically, in that case, the debtor had sought to apply both the $1200 exemption for a "motor vehicle" under 735 ILCS 5/12-1001(c) and the $2000 exemption for "any other property" under 735 ILCS 5/12-1001(b) to the same automobile. We concluded that it was not clear from the language of the statute whether the legislature intended a debtor to use the exemptions in this way. Consequently, given that Illinois exemptions were to be interpreted liberally in favor of the debtor, we held that the "debtor [wa]s entitled to stack his exemptions for the same motor vehicle under both subsections (b) and (c)." *In re Barker*, 768 F.2d at 196.

The trustee argues that the subsection (a) exemption, like the "any other property" exemption discussed in *In re Barker*, is susceptible to more than one interpretation. The trustee maintains that Ms. Robinson acknowledged as much when she wrote in her schedule "debtor has been told that there is

---

[11] Appellant's Br. 12.

a 100% exemption for bibles but valuable bibles may or may not be covered under such exemption."[12] The trustee also argues that the "interpretive conflict" between the parties here establishes that, like the exemption in *In re Barker*, the exemption in subsection (a) is ambiguous and therefore "is appropriately resolved by examining the legislative history of Section 1001(a) in order to determine the legislature's intent."[13]

We do not believe that the statement in Ms. Robinson's filing constitutes an admission that the statute is ambiguous. Instead, it simply acknowledges the absence of controlling case law interpreting the "bible" exemption to include a valuable religious text.

Moreover, we cannot conclude that the "interpretive conflict" alone leads to the conclusion that the plain wording of the statute is ambiguous. The trustee and the bankruptcy court rely heavily on "the intent and purpose of the statute" to inform their understanding of the "bible" exemption.[14] In "ascertain[ing] and effectuat[ing] the legislature's intent," "a court looks first to the statutory language itself." *In re Marriage of Logston*, 469 N.E.2d at 171. It is only when "the meaning of an enactment is unclear from the statutory language itself" that "the court may look beyond the language employed and consider the purpose behind the law and the evils the law was designed to remedy, as well as other sources such as legislative history." *Home Star Bank & Fin. Servs. v. Emergency Care and Health Org.*, 6 N.E.3d 128, 135 (Ill. 2014).

---

[12] Bankr. R.1 at 12.

[13] Appellant's Br. 14.

[14] Bankr. R.22 at 7.

Relying on *In re Schoonover*, 331 F.3d 575 (7th Cir. 2003), and *In re Clark*, 714 F.3d 559 (7th Cir. 2013), *aff'd sub nom. Clark v. Rameker*, 134 S. Ct. 2242 (2014), the trustee maintains that the bible exemption should not be applied in such a way as to negate the legislature's purpose and intent. In *In re Schoonover*, we refused to extend the exemption for social security benefits to "funds on deposit long after their receipt" that had been "commingl[ed] with the debtor's other assets." 331 F.3d at 577 (applying Illinois law). Similarly, in *In re Clark*, while applying a federal exemption, we simply refused to extend the exemption for retirement funds to include inherited funds that had originated in a parent's individual retirement account. We explained that,

> by the time the Clarks filed for bankruptcy, the money in the inherited IRA did not represent *anyone's* retirement funds. They had been Ruth's, but when she died they became no one's retirement funds. The account remains a tax-deferral vehicle until the mandatory distribution is completed, but distribution precedes the owner's retirement. To treat this account as exempt under § 522(b)(3)(C) and (d)(12) would be to shelter from creditors a pot of money that can be freely used for current consumption.

*In re Clark*, 714 F.3d at 561; *see also Clark*, 134 S. Ct. at 2247 (quoting same). In each of these cases, the debtors were asking the court to extend an exemption beyond its statutory meaning; the court refused to do so. Here, however, the debtor is simply asking the court to apply the plain wording of the statute. It is the trustee that is asking us to read a restriction—a

dollar-value limitation—into the statute where one does not appear.

Finally, the trustee argues that, following the guidance of the Illinois Supreme Court in *In re Marriage of Logston*, it is appropriate to examine not only a statute's history, "but also the future consequences that would result from adopting one construction as opposed to another." 469 N.E.2d at 174. In *In re Marriage of Logston*, however, the court had concluded that the "statute [wa]s susceptible of two interpretations," and it therefore was "proper to examine sources other than its language for evidence of legislative intent." *Id.* at 172. Here, by contrast, resort to other sources is not necessary because the statutory language is not ambiguous.

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED