In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-2246

IN THE MATTER OF:

GEORGE BURCIAGA,

*Debtor-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18 CV 5293 — **Manish S. Shah**, *Judge.*

ARGUED DECEMBER 2, 2019 — DECIDED DECEMBER 13, 2019

Before BAUER, EASTERBROOK, and SYKES, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* George Burciaga lost his job
in May 2018 and filed for bankruptcy a week later. On the
date the bankruptcy proceeding began, Burciaga's former
employer owed him approximately $24,000 for unused vaca-
tion time. Illinois, where Burciaga lives, treats vacation pay
as a form of wages. 735 ILCS 5/12-801 (final paragraph, de-
fining "wages" to include all compensation that an employer
owes to an employee). Exemptions for debtors in Illinois rest
on state law, for it has exercised its right under 11 U.S.C.
§522(b)(2) to make local exemptions exclusive. See 735 ILCS
5/12-1201. Burciaga asked the district court to treat 85% of

the vacation pay as exempt from creditors' claims. (Illinois permits creditors to reach 15% of unpaid wages but forbids debt collection from the rest. 735 ILCS 5/12-803.) Alex Moglia, the Chapter 7 Trustee, objected to this request. Both a bankruptcy judge and a district judge sided with the Trustee. 602 B.R. 675 (N.D. Ill. 2019).

The district judge concluded that unpaid wages are not exempt in bankruptcy. That's not because of anything in the federal statute, which points to state law as a source of exemptions. Nor is it because of anything in Illinois law, which exempts 85% of unpaid wages from all forms of collection authorized by state law. Rather, the district judge stated, it is because Illinois did not "intend" to exempt vacation pay from creditors' claims in bankruptcy, as exemplified by the fact that the state's statutes do not specifically mention bankruptcy law. The only intent the district judge could find was to exempt vacation pay (and other employment-related compensation) from creditors' claims in state court, through garnishment and similar proceedings.

This focus on intent, and on the fact that Illinois specifies only how wages are treated in state-law collection proceedings, is unfortunate. Section 522(b)(2) and (3)(A), which applies state-law exemptions in bankruptcy, does not ask courts to determine what state legislators may have been thinking or hoping would happen in federal court. The federal statute instead asks what is exempt under state law. Whatever is exempt under state law is exempt under federal law too. State legislators need not know about this rule; exemption in bankruptcy happens as a result of §522, not as a result of state legislators' plans or desires or understanding.

True, *In re Geise*, 992 F.2d 651 (7th Cir. 1993), refers to legislative intent when addressing another issue about an exemption in bankruptcy, but the trope that the meaning of statutory text may depend on the intent of the legislature does not mean that state legislative intent controls the meaning of a federal statute. Legislative history (and thus legislative intent) may be consulted when a statute is ambiguous, but there's nothing ambiguous about the text that Illinois has enacted—nor is there any ambiguity in the rule of §522(b)(2) and (3)(A) that what is exempt under state law is exempt in federal bankruptcy proceedings. There's no need for some additional intent or enactment, at the state level, to make the federal rule of §522 work. We observed in *Geise* that a state creates an exemption when it shelters income or assets from all forms of collection, without meaning that state law needs to refer specifically to bankruptcy; federal law itself carries state-law exemptions over to bankruptcy.

The question we must resolve, therefore, is whether 85% of all unpaid wages in Illinois are exempt from creditors' claims in state courts. The last time this court looked at that question, it answered "no." See *Wienco, Inc. v. Scene Three, Inc.*, 29 F.3d 329 (7th Cir. 1994). We observed that 735 ILCS 5/12-803 protected wages from garnishment proceedings, so that the employer could not be ordered to hand more than 15% directly to a creditor, but that other forms of collection remained possible. In particular, *Wienco* noted, 735 ILCS 5/2-1402(c)(2) permitted a court to direct a judgment debtor to turn assets over to a creditor, in whatever amount the court deemed appropriate. It followed, we held, that 735 ILCS 5/12-803 was not an exemption from all creditors' claims and therefore did not apply in bankruptcy.

The Trustee does not rely on *Wienco*, however, for it was obsolete by the time it was issued. Illinois had amended its code, effective January 1, 1994, to apply the 15%-of-wages limit to collection under 735 ILCS 5/2-1402(c)(2). After the amendment, §5/2-1402(c)(2) provides that "the judgment debtor shall not be compelled to pay income which would be considered exempt as wages under the Wage Deduction Statute" (i.e., §5/12-801 to 819). That did not affect *Wienco*, for the amendment was not retroactive and the bankruptcy court's exemption decision had been made in 1993. But today 735 ILCS 5/12-803 seems to be comprehensive.

Still, the Trustee insists, we should not treat the state law as effective in bankruptcy, because the exemption applies only before wages have been paid. Once a worker has cashed a paycheck, the money is freely available. Let us assume that this is true—that state law does not try to trace the origin of cash in a bank account. The fact remains that on the day Burciaga filed for bankruptcy he did not have cash. He had a claim against his former employer for unpaid wages.

What is exempt, and what is not, depends on the state of affairs when bankruptcy begins. 11 U.S.C. §522(b)(3)(A); *Owen v. Owen*, 500 U.S. 305, 314 n.6 (1991) ("exempt property is determined 'on the date of the filing of the petition'"); *White v. Stump*, 266 U.S. 310, 313 (1924) (describing the time of filing as a "line of cleavage"). Like most other states, Illinois exempts some of a home's value and some of an auto's value. If a person sells a car for cash and files for bankruptcy the next day, creditors can reach the cash; the estate never had a car that could be exempt.

Property vests in the estate on the day bankruptcy begins. 11 U.S.C. §541(a)(1). This is the property available to

satisfy creditors' pre-filing claims. 11 U.S.C. §522(c). If the debtor has cash on that day, its treatment depends on how much cash a state exempts. If the debtor has a car on that day, its treatment depends on how much of a car's value the state exempts. And, if a debtor has a wage claim, how much the creditors can reach depends on how the state treats unpaid wages.

We must assess the legal effect of things as they were when this bankruptcy began, not as they might have been. That a car may be sold while bankruptcy is under way does not make all of the proceeds available to satisfy pre-bankruptcy claims; the debtor retains any exempted amount. See, e.g., *Brown v. Sommers*, 807 F.3d 701, 708 (5th Cir. 2015); *Pasquina v. Cunningham*, 513 F.3d 318, 324 (1st Cir. 2008). That is equally true of wages collected after a bankruptcy begins.

The Trustee maintains that treating unpaid wages as exempt would be unjust to creditors. Today's dispute concerns $20,400 (85% of $24,000), but the sum could be bigger. What if a corporate executive or football coach filed for bankruptcy while owed three years' severance pay, at a million dollars a year? (There's a severance-pay dispute about Burciaga too, see 597 B.R. 426 (Bankr. N.D. Ill. 2019), though it isn't ready for appellate decision.) Exempting that much money might seem inequitable—especially if the debtor times the bankruptcy filing strategically—but the Bankruptcy Code is what it is and cannot be overridden in the name of equity. *Law v. Siegel*, 571 U.S. 415 (2014); *In re Kmart Corp.*, 359 F.3d 866 (7th Cir. 2004). Some states exempt the full value of a residence, even a mansion worth $10 million. Residential exemptions were enforced, no matter how inequitable they seemed, until

Congress amended the Bankruptcy Code to prevent exempting the full value of homes bought within a few years of the bankruptcy, or financed with money diverted from creditors. 11 U.S.C. §522(o), (p). State-law exemptions for wages are not subject to a similar limit, and whether one should be created is a decision for Congress to make.

*Robinson v. Hagan*, 811 F.3d 267 (7th Cir. 2016), illustrates that point. Illinois exempts one bible. 725 ILCS 5/12-1001(a). A debtor who owned multiple bibles proposed to exempt the most valuable of them—a first edition Book of Mormon printed in 1830 and worth $10,000 or more. A trustee protested, arguing that the purpose of the exemption is to permit a debtor to retain an heirloom containing family trees and similar memorabilia, not to shield a collector's item from creditors' hands. We replied that the exemption as written does not contain a value limit, and that whether such a limit should be created is for legislators rather than judges to decide. 811 F.3d at 270. Just so with an exemption for wages.

Because 85% of unpaid wages are exempt from creditors' claims in Illinois, and vacation pay is a form of wages, the decision of the district court is

REVERSED.