# IN THE COURT OF APPEALS OF IOWA

No. 21-1904
Filed September 21, 2022

**MUFF CORP., THOMAS P. MUFF, Individually and as Conservator for the JOSEPH ALAN MUFF CONSERVATORSHIP,**
Plaintiffs-Appellants,

**and**

**LAWRENCE J. MUFF, Individually and as Conservator for the JOSEPH ALAN MUFF CONSERVATORSHIP,**
Plaintiff-Appellant,

**vs.**

**TADD JOSHUA PAIGE,**
Defendant-Appellee.
_____

Appeal from the Iowa District Court for Crawford County, Tod Deck, Judge.

After winning summary judgment in its conversion action, the creditor-estate appeals a ruling that the defendant-debtor's inherited IRAs were exempt from execution. **REVERSED AND REMANDED.**

Maura Sailer of Lohman, Reitz, Sailer, Ullrich & Blazek, Denison, for appellant.

Justin F. Reininger of Boerner & Goldsmith Law Firm, P.C., Ida Grove, for appellee.

Considered by Bower, C.J., and Vaitheswaran and Tabor, JJ.

**TABOR, Judge.**

Tadd Joshua Paige stole over three-quarters of a million dollars from his stepfather, Joseph Muff (Joe). Paige also inherited from Muff two individual retirement accounts (IRAs) valued at nearly $60,000.[1]

Muff Corporation brought a conversion action alleging that Paige funneled cash from his stepfather's investments without permission and wrote checks from the family farm accounts for his own benefit.[2] The district court granted Muff's unresisted motion for summary judgment but denied a request to execute against the inherited IRAs. The estate appeals that denial, arguing the inherited IRAs are not exempt from Paige's creditors under Iowa Code section 627.6(8)(f) (2018). Because inherited IRAs are not "retirement investments" under the exemption statute, we reverse and remand for further proceedings.

## I. Facts and Prior Proceedings

Paige's mother was married to Muff. After she died in 2015, Muff's physical and mental health deteriorated. Paige lived with his stepfather. About a year after his mother's death, Paige started withdrawing money from Muff's investments without his knowledge. That deception led the State to charge Paige with multiple thefts.[3]

---

[1] One of the accounts was a simplified employee pension plan (SEP), but the parties and the district court refer to them both as IRAs.

[2] The plaintiffs included Muff Corporation, as well as Thomas and Lawrence Muff, as conservators for Joe and as individuals. Joe died while the action was pending, and the parties stipulated to the substitution of his estate. We will refer to the plaintiffs collectively as Muff or the estate.

[3] In a forty-five-count trial information, the Crawford County Attorney charged Paige with felony theft and specified unlawful activity. He pleaded guilty to three counts of first-degree theft.

Paige described the scheme at his guilty plea hearing:

> I called The Hartford [Core Equity Fund] and impersonated Joe and had them send the checks to our mutual address that I shared with Joe. And then when the checks arrived [by mail], I endorsed Joe's name on them and deposited money into the bank.

Meanwhile, Muff sued Paige alleging the stepson converted cash belonging to the family corporation, the farm business, and Muff's personal accounts. The suit asked the district court to appoint a receiver to take control of "Paige's" assets because he was reportedly "quickly selling off property and has scattered property in different locations." Acting on that request, the court appointed George Blazek as receiver in July 2018. Muff died two months later, and his estate was substituted.

The estate moved for summary judgment, asking for $770,370.00 in damages. Noting no resistance, the court granted the estate's motion. Then the court scheduled a hearing to determine the disposition of the property preserved by the receiver. As of June 2021, the receivership held property from Paige valued at just over $46,000.00. On top of that, the receiver intercepted two retirement accounts that Muff had at Defiance Bank: a traditional IRA valued at $34,536.36 and an SEP plan valued at $24,143.05—both of which named Paige as a beneficiary payable on death.

In preparation for the hearing, receiver Blazek briefed this issue: are decedent Muff's traditional IRA and his SEP account exempt from claims by Paige's creditors, under Iowa Code section 627.6(8)(f)(1)(d), for IRAs established under section 408(a) of the Internal Revenue Code? According to Blazek's analysis, once received by Paige, the IRAs were no longer exempt from creditors

because they were not "established" under section 408(a). The estate argued the same.

The district court read the statute differently. It held that the inherited IRAs were exempt from execution because once they were "established" or "brought into existence" under section 408(a), they retained that designation, even beyond the decedent's lifetime. The estate now appeals.

## II.      Scope and Standards of Review

Because this case calls for interpretation of the exemption statute, we review the district court ruling for the correction of legal error. *Com. Bank v. McGowen*, 956 N.W.2d 128, 132–33 (Iowa 2021). "It is the wise policy of the law to construe exemption statutes liberally but it is not the province or power of the court to enlarge or extend the provisions of the legislative grant." *Iowa Methodist Hosp. v. Long*, 12 N.W.2d 171, 175 (Iowa 1943). Thus, we must keep in mind the benefit that the legislature intended to convey through the exemptions. *See Roberts v. Parker*, 90 N.W. 744, 744 (1902). Yet our fundamental task is "to determine the fair and ordinary meaning of the statutory language at issue." *McGowen*, 956 N.W.2d at 133. We construe words and phrases "according to the context and the approved usage of the language." Iowa Code § 4.1(38). If the text is unambiguous and its meaning is clear, we can stop our inquiry. *In re Est. of Voss*, 553 N.W.2d 878, 880 (Iowa 1996). But if the language is ambiguous or

vague, we "may resort to other tools of statutory interpretation." *McGowen*, 956 N.W.2d at 133 (citation omitted).

As the debtor, Paige bears the burden to show an exemption applies. *See First Nat'l Bank v. Larson*, 239 N.W. 134, 136 (1931).

### III.    Analysis

The sole question on appeal is whether Paige, who owes Muff's estate over $770,000.00 in damages, may hold exempt from execution of that judgment two IRAs that he inherited from Muff.[4]   To answer, we look to the exemptions for retirement investments in Iowa Code chapter 627.

> A debtor who is a resident of this state may hold exempt from execution the following property:
> . . . .
> 8. The debtor's rights in:
> . . . .

---

[4] Paige raises a preservation-of-error argument.  He contends we should dismiss this appeal because Muff makes a different argument here than in the district court. Muff argued in the district court that Paige's inherited IRAs were not exempt under section 627.6(8)(f)(1)(d) because they were not "established under section 408(a) of the Internal Revenue Code."  Paige insists that "Muff has completely abandoned that argument" and instead couches its entire appeal on Iowa Code section 627.6(8)(f)(2) that provides only IRAs "funded by the debtor or his employer are exempt from execution."  Paige also emphasizes that the district court did not rule on that argument under paragraph (2).

In reply, Muff accuses Paige of confusing the receiver's argument with the position advanced by the estate.  True, the receiver concentrated on the "established under section 408(a)" language of the exemption statute.  But the estate points to a more general statement by its lawyer at the hearing contending, "the plain language of the statute on exemptions does not include a gift to [Paige]." The estate maintains that it is making that same argument on appeal, "merely stating it more precisely."  Finally, the estate notes the district court *did* rule on the "ultimate issue" by holding that Paige's inherited IRAs were exempt property.

We agree with Muff on error preservation.  Granted, neither the receiver nor the estate cited section 627.6(8)(f)(2) in the district court.  But the estate's present discussion of that paragraph is "additional ammunition for the same argument" it made in the district court—"not a new argument advanced on appeal."  *JBS Swift & Co. v. Ochoa*, 888 N.W.2d 887, 893 (Iowa 2016).

f. (1) *Contributions and assets*, including the accumulated earnings and market increases in value, in any of the plans or contracts as follows:

. . . .

(d) For simplified employee pension plans, self-employed pension plans (also known as Keogh plans or H.R. 10 plans), *individual retirement accounts established under section 408(a) of the Internal Revenue Code*, individual retirement annuities established under section 408(b) of the Internal Revenue Code, savings incentive matched plans for employees, salary reduction simplified employee pension plans (also known as SARSEPs), and similar plans for retirement investments authorized in the future under federal law, *the exemption for contributions shall not exceed, for each tax year of contributions, the actual amount of the contribution deducted on the debtor's tax return or the maximum amount which could be contributed to an individual retirement account established under section 408(a) of the Internal Revenue Code and deducted in the tax year of the contribution, whichever is less.* The exemption for accumulated earnings and market increases in value of plans under this subparagraph division shall be limited to an amount determined by multiplying all the accumulated earnings and market increases in value by a fraction, the numerator of which is the total amount of exempt contributions as determined by this subparagraph division, and the denominator of which is the total of exempt and nonexempt contributions to the plan.

. . . .

(2) For purposes of this paragraph "f", "market increases in value" shall include, but shall not be limited to, dividends, stock splits, interest, and appreciation. *"Contributions" means contributions by the debtor and by the debtor's employer.*

Iowa Code § 627.6(8)(f)(1)(d), (2) (emphasis added).

We then ask: did the district court wrongly determine the inherited IRAs were exempt from execution by focusing on the phrase "established under section 408(a) of the Internal Revenue Code" in section 627.6(8)(f)(1)(d)?[5] Muff says "yes"

---

[5] The district court found that both accounts should be "treated the same" because they were both IRAs, noting "the simplified employee pension plan in relevant terms is merely an indication of the method by which the account was funded." Trouble is, section 627.6(8)(f)(1)(d) separately lists SEP plans and IRAs "established under section 408(a) of the Internal Revenue Code." So the court's reliance on that qualifying phrase would apply only to the traditional IRA.

because the "contributions" referenced in paragraph (f) are limited to "contributions by the debtor and by the debtor's employer." *See id.* § 627.6(8)(f)(2). In the estate's view, it doesn't matter if the IRAs were established under section 408(a) because they were not established by the debtor.

Paige counters that Muff's argument ignores the language after "contributions" in section 627.6(8)(f)(1), namely, "contributions *and assets*, including the accumulated earnings and market increases in value." (Emphasis added.) Paige ventures that "an inherited IRA is undoubtedly an 'asset' of the debtor whether they contribute to it or not." Muff replies that such a broad reading of "assets" would render the limitation on "contributions" in paragraph (2) meaningless "because all contributions to an IRA in the debtor's name would necessarily belong to the owner of the IRA."

As a first step in resolving this interpretive snarl, we must decide whether the language is ambiguous. *See State v. Doe*, 903 N.W.2d 347, 351 (Iowa 2017). If reasonable minds could differ as to its meaning, the statute is ambiguous and requires us to resort to principles of construction. *State v. Zacarias*, 958 N.W.2d 573, 581 (Iowa 2021). We find the term "assets" in section 627.6(8)(f)(1) to be ambiguous. On the one hand, it could simply mean property that has value. On the other hand, paired with contributions, it could be limited to property that has value and began as contributions from the debtor or the debtor's employer. *See* Iowa Code § 627.6(8)(f)(2).

Having found ambiguity, we turn to the rules of statutory construction. One of those rules is the presumption that the entire statute must be given effect. Iowa Code § 4.4(2). On this point, we share the estate's view that Paige's broad reading

of "assets" would render superfluous the limitation on "contributions" (as being from the debtor and the debtor's employer) in paragraph (2). Those contributions act as seed money for the retirement investment plans. With time, those contributions become "accumulated earnings" and, along with "market increases in value," amount to the debtor's "assets" mentioned at the outset of section 627.6(8)(f)(1). So, in context, "assets" cannot be viewed as encompassing inherited IRAs when the original contributions did not come from the debtor or the debtor's employer.

That contextual view is confirmed by looking to the limits placed on the exemption amounts under paragraph (d) of section 627.6(8)(f)(1). For example, the exemption for contributions is limited by the debtor's tax deductions or potential tax deductions. And the exemption for accumulated earnings and market increases in value is limited to the product of a multiplication exercise. Paige does not explain how those calculations would apply to his rights in the inherited IRAs.

And that contextual view is a natural segue to the whole-text canon. That canon "calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts." *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012). To that end, when deciding whether inherited IRAs are exempt from judgment creditors, we must consider not only the whole text of subsection (8)(f)(1)(d) on retirement investments, but all the general exemptions in section 627.6.

So, zooming out, we look to the nature of those general exemptions and the purpose they serve. In short, "the purpose of an exemption is to prevent a debtor from becoming destitute." *In re Irish*, 311 B.R. 63, 67 (Bankr. App. 8th Cir. 2004)

(quoting Exempt property, *Black's Law Dictionary* (7th ed. 1999)). Most exemptions in section 627.6 fit that bill, including wearing apparel and household goods; burial plots; life insurance policies; health aids; social security, unemployment compensation, public assistance, veterans, or disability benefits; alimony; a motor vehicle; tools of the trade; cash on hand or bank deposits not to exceed $1000; and rental housing deposits.[6] *See* Iowa Code § 627.6(4), (5)–(7), (9), (11), (12), (14), (15). Like those listed categories, "[t]he purpose behind exempting pension plans is to secure for the debtor a subsistence level of income in retirement." *See In re Pepmeyer*, 273 B.R. 782, 787 (N.D. Iowa 2002) (examining Iowa Code § 627.6(8)).

But that same subsistence theory does not apply to inherited IRAs. Why? Because "[i]nherited IRAs do not operate like ordinary IRAs." *Clark v. Rameker*, 573 U.S. 122, 125 (2014). The *Clark* court noted four main differences: (1) with the exception of the owner's spouse, the owner of an inherited IRA may not "roll over" the funds but must "hold the IRA as an inherited account"; (2) "an individual may withdraw funds from an inherited IRA at any time, without paying a tax penalty"; (3) in fact, the beneficiary "must either withdraw the entire balance in the account within five years of the original owner's death or take minimum distributions on an annual basis"; and (4) the owner of an inherited IRA may not contribute to the account. *Id.* Given those differences, "inherited IRAs represent an opportunity for current consumption, not a fund of retirement savings." *See In*

---

[6] Other exemptions serve more sentimental or historical purposes, for example, wedding or engagement rings; one shotgun and either one rifle or musket; and private libraries, family bibles, and portraits. *See* Iowa Code § 627.6(1), (2), (3).

*re Clark*, 714 F.3d 559, 562 (7th Cir. 2013). In affirming the Seventh Circuit, the Supreme Court held that an IRA inherited by the debtor from her late mother did not qualify as "retirement funds" under 11 U.S.C. section 522(b)(3)(C) of the federal exemption statute. *Clark*, 573 U.S. at 129–30 (2014) (noting exemptions serve important purpose of protecting debtor's "essential needs" but exempting inherited IRAs would be "free pass" to debtor (citation omitted)).

Unlike the federal provision, Iowa's exemption statute does not use the phrase "retirement funds." But section 627.6(8)(f)(1)(d) does reference "retirement investments"—a similar concept. After listing SEP plans, IRAs established under 26 U.S.C. section 408(a), and other specific instruments, this subsection extends the exemption to "similar plans for retirement investment authorized in the future under federal law." Iowa Code § 627.6(8)(f)(1)(d). That listing invokes the associated-words canon. *See* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* at 195 (advising that "words grouped in a list should be given related meanings (citation omitted)). That is, to be exempt, IRAs must be retirement investments. Inherited IRAs are not retirement investments. *Cf. Clark*, 573 U.S. at 130 ("In ordinary usage, to speak of a person's 'retirement funds' implies that the funds are currently in an account set aside for retirement, not that they were set aside for that purpose at some prior date by an entirely different person."). Like the *Clark* court interpreting federal exemptions, we determine an inherited IRA falls outside our statute's reference to contributions and assets set aside for retirement by the benefactor.

Which brings us back to the district court's interpretation of "established under" in Iowa's exemption statute. Citing the dictionary, the court defined

"establish" as "to begin or create" or "to bring into existence." From that definition, the court found,

> The IRAs at issue here were unquestionably began, created, and brought into existence under Section 408(a). They were established under 408(a). Unless their designation as inherited IRAs changes their character in some manner that causes them to be reestablished or established as something different than they were during the decedent's lifetime, they are exempt.

The court distinguished a Montana Supreme Court case cited by the receiver. *See In re Golz*, 360 P.3d 1142, 1143 (Mont. 2015) (holding that inherited IRA was not exempt under state statute because the legislature exempted IRAs "as defined in 26 U.S.C. section 408(a)" and inherited IRAs were defined in section 408(d)(3)(C)(ii)).[7] The court determined that "defined in" (used by the Montana legislature) carried a different meaning than "established under" (adopted by Iowa lawmakers).

We disagree with the district court's interpretation. While defining "establish," the court overlooked the word "under." The phrase "established under" refers to the source of the authorization for exempted IRAs, that is section 408(a) of the Internal Revenue Code.[8] *See generally United States v. Marine Shale*

---

[7] In a similar interpretive exercise with a different result, the Rhode Island Supreme Court decided an inherited IRA *was exempt* under its state statute because the exemption extended to IRAs "as defined in the Internal Revenue Code, 26 U.S.C. §§ 408 and 408A" with no restriction to subsection (a) of section 408. *In re Kapsinow*, 220 A.3d 1231, 1234 (R.I. 2019).

[8] These retirement plans were added to the exemption statute in 1999 to eliminate perceived discrimination between the types of accounts covered. According to legislative history, qualified plans under the federal Employee Retirement Income Security Act, such as most employer-maintained pension plans, were exempt from the claims of creditors. But self-employed persons using a Keogh plan or IRA as their retirement vehicle were not similarly protected. *See* H.S.B. 6, 78th Gen. Assembly, 1st Sess. (Iowa 1999).

*Processors*, 81 F.3d 1329, 1356 (5th Cir. 1996) (defining phrase "established under" in federal regulation as source of state's authority for issuing permit). It does not refer to the creation of Muff's particular retirement accounts. And even if it did, the character of the accounts *did* change when inherited by Paige. As discussed above, inherited IRAs are governed by different rules. The accounts were "retirement investments" when owned by Muff but not when passed to Paige. *See Clark*, 714 F.3d at 561 ("[T]he 'IRA' part of 'inherited IRA' (as the Internal Revenue Code uses the phrase) designates the funds' *source*, not the assets' current status . . . . [A]n inherited IRA does not have the economic attributes of a retirement vehicle."). The district court's focus on the meaning of "established"—in isolation from the rest of the exemption statute—defied the whole-text and associated-words canons.

In the end, when interpreting our exemption statute, we "must not substantially depart from [its] express language" or "extend the legislative grant." *In re Hahn*, 5 B.R. 242, 244 (Bankr. S.D. Iowa 1980). Nowhere does Iowa Code section 627.6(8)(f) mention inherited IRAs. *Contra In re Kara*, 573 B.R. 696, 701 (Bankr. W.D. Tex. 2017) (noting Texas statute expressly provided that "an inherited individual retirement account . . . is exempt from attachment, execution, and seizure for the satisfaction of debts" (citation omitted)). We cannot add an exemption where our legislature did not do so. Because Paige did not prove the inherited IRAs were exempt under Iowa law, we reverse the district court order and remand to allow the estate to collect on those accounts.

**REVERSED AND REMANDED.**